Weygandt, C. J.
 

 The first question to be considered is whether the plaintiff, as executrix, possesses the legal capacity to prosecute this action.
 

 It is the contention of the city that the plaintiff is merely the personal representative of her husband, and therefore lacks the capacity to recover damages for trespass occurring after the death of her husband. However, the plaintiff insists that she is not basing her claim upon future trespass, but rather upon a trespass that has already occurred during her husband’s lifetime, and has caused permanent and continuing injury to his land. The trial court followed the plaintiff’s theory of the case, and carefully submitted it to the jury accordingly. This court is of the opinion that this course was correct.
 
 Lawrence Ry. Co.
 
 v.
 
 O’Harra,
 
 50 Ohio St., 667, 36 N. E., 14.
 
 Union Savings Bank & Trust Co., Exr.,
 
 v.
 
 Western Union Telegraph Co.,
 
 79 Ohio St., 89, 86 N. E., 478, 128 Am. St. Rep., 675.
 

 The next question is whether it was error to sus
 
 *171
 
 tain the demurrer to the second defense of the amended answer.
 

 The city contends that the construction and mainte-' nance of the reservoir was the exercise of a governmental function.
 

 Counsel cite a number of decisions by this court, but in none is this precise question decided. Without indulging in an extended discussion of the authorities it is sufficient to observe that there seems to be no sound reason for this court to refuse to follow the generally recognized rule holding this to be a proprietary func- ' tion. The following statement of the rule appears in 19 Ruling Case Law, 1130:
 

 “A characteristic example of a function undertaken by cities and towns in their private or proprietary capacity is the distribution of water to their inhabitants for domestic purposes. Such a function is one that is often performed by private water companies, and when assumed by a municipal corporation it is a purely commercial transaction between the municipality as a dealer and the citizen as a customer. While an ample supply of pure water doubtless enhances the public health, this result is merely incidental, and the primary object of a city or town in securing a water supply is to increase the comfort and convenience of its own inhabitants.”
 

 The rule is similarly stated in 43 Corpus Juris, 1177.
 

 The final question relates to the correctness of the rule of liability as applied in the charge of the court.
 

 The 'theory followed by the court is illustrated by the following, instruction given upon plaintiff’s . request :
 

 “If you find by a preponderance of the evidence that the plaintiff’s lands were suitable and available for farm purposes or for subdivision and sale in acreage tracts or other useful and valuable purpose before the establishment of the Barberton reservoir, and that the defendant by the damming up of Wolfe’s creek and
 
 *172
 
 the impounding of water in its reservoir caused water to flow or ooze or percolate or seep from its reservoir through the sub-strata' or subsoil of the land lying between plaintiff’s lands and said reservoir, into, onto or upon plaintiff’s lands, thereby rendering the same or any part or parts thereof, sour, wet or swampy and permanently unfit and unsuitable for use as farm lands, or for subdivision and sale in acreage tracts, or for any other useful or valuable purpose for which you may find said lands to have been suitable and available before water was impounded in said reservoir, and that said dam and reservoir are permanent structures and that water will be impounded therein permanently, and that water therefrom has continued and will continue permanently to flow or ooze or seep or percolate through the subsoil of the intervening lands, into, onto or upon plaintiff’s lands, so that, by reason thereof, plaintiff’s lands, or any parts or portions thereof, have ever since the impounding of water in said reservoir been, and will be permanently sour, wet or swampy, and thereby rendered permanently unfit, unsuitable and unavailable for use as farm lands, or for subdivision and sale in acreage tracts, or for any other useful and valuable purpose for which you may find said lands to have been suitable and available before water was impounded in said reservoir, and that such was the necessary, natural, direct and proximate-result of the establishment of said dam and reservoir and the impounding of water therein in 1926, I charge you as a matter of law, that the same constitutes a trespass upon the lands described in plaintiff’s petition, and the defendant is liable to the plaintiff in this action, without regard to whether or not the defendant used due care in the construction and maintenance of said dam and reservoir, and the impounding of water therein, and if you further find by a preponderance of the evidence, that as a direct and proximate result of said trespass, plaintiff’s said lands, at
 
 *173
 
 the time water was impounded in said reservoir by the defendant, were permanently injured or damaged by being permanently diminished or depreciated in value, plaintiff is entitled to recover in this action the difference between the fair and reasonable market value of said lands for the most valuable purpose or use for which they were suitable and available in the condition they were in immediately prior to said trespass and the fair and reasonable market value of said lands for such purpose in the condition they were immediately after said trespass.”
 

 This was in conformity with the uniform decisions of this court holding that under such circumstances liability is not dependent upon negligence. A discussion of a few of these cases appears in
 
 City of Mansfield
 
 v.
 
 Balliett,
 
 65 Ohio St., 451, on page 478, 63 N. E., 86, 58 L. R. A., 628.
 

 Consistent with the foregoing views the judgment of the Court of Appeals must be affirmed.
 

 Judgment affirmed.
 

 Allen, Stephenson, Bevis and Zimmerman, JJ., concur.