Zimmerman, J.
 

 The city of Cleveland is a charter city. In support of its authority and power to enact and enforce its ordinances, Sections 3 and 7, Article xvm, Constitution of Ohio, are quoted, as follows:
 

 “Section 3. Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
 

 “Section 7. Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government.”
 

 Attention is also directed to Sections 3632, 3675 and 3714, General Code, enumerating the powers of municipalities over the public highways within their limits, with particular application to the regulation and licensing of vehicles operated for hire thereon.
 

 The following cases in which the exercise of such power has been upheld are relied upon by counsel for the city of Cleveland:
 
 Froelich
 
 v.
 
 City of Cleveland,
 
 99 Ohio St., 376, 124 N. E., 212;
 
 Village of Perrysburg
 
 v.
 
 Ridgway, a Taxpayer,
 
 108 Ohio St., 245, 140 N. E., 595;
 
 Murphy
 
 v.
 
 City of Toledo,
 
 108 Ohio St., 342, 140 N. E., 626.
 

 It was conceded by counsel for the village of North Olmsted, in open court, that the ordinances in question are not unreasonable or arbitrary. Granting their general validity, his argument is that the North Olmsted bus line was created and exists under the constitutional authority contained in Sections 4 and 6, Article XVIII, Constitution of Ohio, which exempt it
 
 *147
 
 from the character of the ordinances sought to be enforced. Those sections read:
 

 “Section 4. Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. * * *”
 

 “Section 6. Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others any transportation service of such utility and the surplus product of any other utility in an amount not exceeding in either case fifty per centum of the total service or product supplied by such- utility within the municipality.”
 

 On this point counsel for defendant in error says in his brief:
 

 “The defendant in error does not contend as plaintiff in error attempts to state in its brief that it can operate over the streets of the City of Cleveland in total disregard of the laws and ordinances of said city, and in its operation it does comply to all traffic regulations, ordinances and laws in the use of the highways as they apply to the general public, and only contends that its right to operate in the City of Cleveland for the purpose of the transportation of the people of North Olmsted and of Fairview, with which it contracted, cannot be prohibited or abridged by the charter or ordinances of plaintiff in error, which defendant in error contends are in derogation and contrary to the provisions of the sections of the constitution from which it derives its authority.”
 

 In considering the proposition before us it must be borne in mind that defendant in error cannot claim advantages it might enjoy if it were operating a motor transportation company under a certificate of con
 
 *148
 
 venience and necessity from the Public Utilities Commission of Ohio: Section 614-2», General Code, expressly exempts from the classification of a “public utility” subject to the provisions of Title III, Div. II, Chap. 1, General Code, captioned “Public Utilities Commission,” “such public utilities as are, or may hereafter be owned or operated by any municipality. ’ ’ Consequently, defendant in-error is precluded from relying, as it attempts to do, on Section 614-98, General Code, which otherwise might relieve it from the payment of a municipally imposed license fee. Of course, there can be no doubt but that a bus line operated by a municipality in the common carriage of passengers for hire is a public utility.
 

 We áre unable to discern in the present controversy any conflict between Sections 3 and 7 and Sections 4 and 6, Article XVIII, Constitution of Ohio. The city of Cleveland possesses the authority to enact and enforce ordinances of the kind here involved, so long as they do not contravene general laws. Assuming the constitutional right of defendant in error to operate its bus line on the existing basis, in doing so it acts in a private or proprietary capacity.
 
 City of Barberton
 
 v.
 
 Miksch,
 
 128 Ohio St., 169, 190 N. E., 387; 28 Ohio Jurisprudence, 100, Section 63. When it enters the territorial limits of another municipality, it becomes subject to the reasonable police regulations of that municipality. This court held, in the first paragraph of the syllabus in
 
 State, ex rel. White,
 
 v.
 
 City of Cleveland,
 
 125 Ohio St., 230, 181 N. E., 24, 86 A. L. R., 1172:
 

 “A municipality, in so far as it acts in a proprietary capacity, possesses the same rights and powers and is subject to the same restrictions and regulations as other like proprietors.”
 

 An interesting case sustaining in principle the position of the city of Cleveland is that of
 
 Bay City Plumbing & Heating Co.
 
 v.
 
 Lind,
 
 235 Mich., 455, 209 N. W., 579. There the city of Bay City engaged in
 
 *149
 
 installing a new water system, authorized by law, was obliged to lay water pipe through Bangor township to reach property owned by the city on the shore of a bay. This was done without the consent of the township, which consent was required by law. Thereupon the township supervisors and the highway commissioner proceeded with due care to remove the pipe. A suit for damages against these township officials was successful in the trial court. This judgment was reversed by the Supreme Court of Michigan and final judgment rendered for the township officials, the court holding there was no conflict between the law authorizing a municipality to construct a water system within or without its corporate limits and the law requiring the consent of a political unit to the laying of pipe through its territory, “that the city of Bay City had no right to install its water pipe in the township of Bangor without securing from that township its consent,” and that the township officials were therefore within their rights “in removing the trespass.”
 

 Taking the view of the situation already expressed, we find it unnecessary to discuss or decide the further contention that since the route mileage of the North Olmsted bus line outside the limits of that village is far in excess of fifty per centum of the distance traversed therein, defendant in error is violating Section 6, Article XVTII, Constitution of Ohio, quoted above.
 

 The next and final matter to be determined is the right of the Cleveland Railway Company to inject itself as a party into the controversy. The railway company insists on that right for several reasons. It asserts that it has a franchise from the city of Cleveland which is a contract representing a property right that it may protect against unlawful and therefore unfair competition; that the operation by defendant in error of its bus line within the limits of the city of Cleveland is unlawful and causes the company loss of passenger service which it otherwise would probably
 
 *150
 
 obtain; that the operation of the bus line increases the expenses of the company by wearing pavement that it must maintain, slows up street car operation and is conducive to the hazard of accidents.
 

 Prom an examination of the record it is apparent that both of the lower courts considered the railway company an unnecessary and improper party. The trial court declined to permit it to introduce evidence tending to show loss of revenue occasioned by the existence of the bus line, and dismissed its intervening petition.
 

 The Court of Appeals expressly found “that the appellant, The Cleveland Railway Company, does not have such an interest in this action as entitles it to intervene and become a party,” and dismissed its appeal.
 

 We are persuaded that the lower courts were correct in their position.
 

 The purpose of this action as originally begun was to enjoin the city of Cleveland from enforcing certain of its ordinances, which the city maintained its right to do. That was the precise issue. The contest was essentially one between the two municipalities; no further parties were needed. However, the Cleveland Railway Company entered the fray on its own initiative and attempted to raise questions which might be the subject of litigation, but which were extraneous to the controlling question to be decided in the case.
 

 It is said in 20 Ruling Case Law, 692, Section 31: “Having been permitted to come into the cause because of his interest in the subject matter of the suit, the intervener is restricted to the issue as to such subject matter and cannot insist on raising or trying other issues not involved.”
 

 In accordance with the views expressed, the judgment of the Court of Appeals is affirmed in case No. 25280. The judgment granting the permanent injunction against the city of Cleveland in case No. 25330 is
 
 *151
 
 reversed, and final judgment is rendered for the city of Cleveland exclusive of the injunctive relief prayed for in its cross-petition.
 

 Judgment affirmed in Case No. 25280.
 

 Judgment reversed and final judgment for plaintiff in error in Case No. 25330.
 

 Weygandt, C. J., Stephenson, Williams, Matthias and Day, JJ., concur.
 

 Jones, J., not participating.