334

Masley et al., Appellees, *v.* City of Lorain et al., Appellants

(No. 76-304—Decided December 23, 1976.)

*Wickens & Herzer Co., L. P. A., Mr. William G. Wickens* and *Mr. Richard D. Panza,* for appellees.

*Mr. John J. Hritsko,* city solicitor, and *Mr. Norman J. Beller,* for appellants.

STERN, J. Section 19 of Article I of the Ohio Constitution provides that:

"Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war

or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.''

This court has held that ''[a]ny direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a 'taking' '' in the constitutional sense. *Lake Erie & Western Rd. Co.* v. *Commrs. of Hancock County* (1900), 63 Ohio St. 23, 57 N. E. 1009, paragraph three of the syllabus; *Norwood* v. *Sheen* (1933), 126 Ohio St. 482, 186 N. E. 102. This court has held further that under this principle, a municipality, in creating a public improvement, may be liable for causing sewage (*Mansfield* v. *Balliett* [1902], 65 Ohio St. 451, 63 N. E. 86); percolating water (*Barberton* v. *Miksch* [1934], 128 Ohio St. 169, 190 N. E. 387); or surface water (*Lucas* v. *Carney* [1958], 167 Ohio St. 416, 149 N. E. 2d 238), to be cast upon the land of another, if in so doing the owner is deprived of any of the use and enjoyment of his property. In the present case, it is stipulated that the city's use of Martin Run Creek as part of its storm sewer system resulted in greater amounts of water being drained from other city lands and cast upon plaintiffs' parcels, flooding them during heavy rains. Although the parties have reserved the question of the amount of damages, the stipulated facts plainly establish a direct encroachment which deprives the plaintiffs of the use and enjoyment of their lands, and which also decreases the fair market value of those lands.

The city maintains, nonetheless, that it is not liable for appropriating the plaintiffs' property because it has a right as an upstream riparian proprietor to collect surface water from a watershed area within its corporate lim-

its and channel it into a natural watercourse which originates in or passes through the municipality, thus increasing the volume and accelerating the flow of water in the watercourse. The city maintains further that it is not liable to downstream landowners even though the municipality thereby causes the flooding of their properties. The city relies largely on the case of *Munn* v. *Horvitz Co.* (1964), 175 Ohio St. 521, 196 N. E. 2d 764. In that case, downstream proprietors sought to enjoin completion of a municipal storm sewer system which would increase the volume and accelerate the flow of water through a natural watercourse. The decision in that case did not consider whether the plaintiffs had suffered any material damage to their properties by flooding or some other cause, or whether, if such damage were shown, an action would lie for appropriation even though injunction would not, although two judges asserted in dissent that an action for damages would lie. Nor did the decision purport to modify Ohio law concerning riparian rights. This court relied upon a number of Ohio cases, which hold, generally, that an upper riparian proprietor has the right to increase the flow of water in a watercourse in the reasonable use of his land, and which also hold, generally, that this right is not so absolute that it permits the proprietor to ignore the rights of other proprietors under all circumstances. In *Mason* v. *Commrs. of Fulton Co.* (1909), 80 Ohio St. 151, 88 N. E. 401, the case primarily relied upon in *Munn,* it was held that a rural landowner could, in the reasonable use of his land, drain the water from it into its natural outlet, and thus increase the volume and accelerate the flow of water upon lower lands, without becoming liable for assessments designed to help artificially drain the lower lands. The theory of the decision was that a lower tenement is under a natural servitude to a higher one to receive the surface water that naturally flows from it onto the lower. The court specifically warned, however, that the rule stated "is not always applied in the case of city lots * * * [citation omitted], and that the rule respecting the flow of surface water does not

apply to the overflow of rivers. *Crawford* v. *Rambo*, 44 Ohio St., 279.''

Other Ohio cases have generally held or assumed that an upper landowner may be liable to a lower, if the former's use of his property is unreasonable under the circumstances and such use causes material damage by flooding the latter's property. *Spicer* v. *White Bros. Builders* (1962), 118 Ohio App. 11; *Nagy* v. *Akron* (1927), 27 Ohio App. 250; *Pontifical College* v. *Kleeli* (1907), 5 N. P. (N. S.) 241, 18 O. D. 703; *Kemper* v. *Widows' Home* (1881), 6 Dec. Rep. 1049; but cf. *Spielberger* v. *Twelfth Dayton Builders' Corp.* (1960), 76 Ohio Law Abs. 12, 142 N. E. 2d 561. Some cases have considered the question open because this court has not considered or adopted the so-called capacity-of-the-stream rule. See *Oakwood Club* v. *South Euclid* (1960), 83 Ohio Law Abs. 153, 165 N. E. 2d 699.

The leading Ohio case on the riparian rights of municipal corporations is *Canton* v. *Shock* (1902), 66 Ohio St. 19, 63 N. E. 600. The holding in that case was essentially that an incorporated municipality situated on a natural flowing stream is, in its corporate capacity, a riparian proprietor; that the primary use of water is for domestic purposes, the secondary use for purposes of power; and that ''* * * where there is not sufficient water in a stream to supply fully the needs of all the proprietors on the stream for power purposes, no one has the right to use all the water and thereby deprive those below him from the use of any; nor can those below rightly insist that those above shall use no water for power and thereby save it all for those below. Each should use the water reasonably, and so as to do as little injury to the others as circumstances will permit. * * *'' *Id.*, at page 30.

That case did not involve the issue of appropriation, nor the issues of acceleration of flow or flooding. But the basic principle that the city must exercise its rights reasonably, and so as to cause as little injury to others as circumstances will permit, has been applied in cases analogous to the present one. In *Piqua* v. *Morris* (1918), 98 Ohio St.

42, 120 N. E. 300, the court held in paragraph two of the syllabus that:

"In the construction and maintenance of a hydraulic, or similar work, a municipality, or other owner, is required to use ordinary skill and foresight to prevent injury to others in times of floods to be reasonably anticipated; and if injury is caused by the negligence of such owner, he is liable in damages, provided his negligence is one of the proximate causes of the injury, although it concurred with other causes, including the act of God."

In *Barberton* v. *Miksch, supra* (128 Ohio St. 169), paragraph three of the syllabus states:

"Casting water upon the land of another by seepage or percolation resulting from the construction and maintenance of a reservoir by a municipality as a part of its system for supplying water to its inhabitants, constitutes a trespass."

In *Lucas* v. *Carney, supra* (167 Ohio St. 416), the issue was whether construction of a public improvement on county property which greatly increased the amount and the force of surface water which flowed onto the plaintiff's property, overflowing and inundating it, raised a claim of *pro tanto* appropriation. The court held that:

"Where, in creating a public improvement upon land which it owns, a county without negligence or malice but solely as a result of the creation of such improvement physically encroaches upon the land and property of another owner and deprives that owner of any of the use and enjoyment of his property, such encroachment is a taking *pro tanto* of the property so encroached upon, for which the county is liable, and the owner of such property is entitled to institute an action and have a jury impaneled to determine the compensation due him from the county for the appropriation *pro tanto* of his property."

In so holding, this court impliedly rejected the common-enemy doctrine of surface water drainage as applied to public improvements in urban areas.

The above cases establish that a municipality, in con-

structing public improvements, is liable for appropriation *pro tanto* if it changes the flow of surface water so as to physically encroach upon the property of another by continued flooding which deprives the owner of any of the use and enjoyment of his property (*Lucas* v. *Carney, supra*); that the municipality is liable for trespass in casting waters upon the land of another by seepage and percolation (*Barberton* v. *Miksch, supra*); and that it is liable in the construction and maintenance of a hydraulic or similar work if it fails to use ordinary skill and foresight to prevent injury to others in times of floods which can be reasonably anticipated (*Piqua v. Morris, supra*). The municipality is also liable if it causes sewage to be emptied into a natural watercourse, thereby creating a nuisance inflicting special and substantial damages on a lower landowner. *Mansfield* v. *Balliett supra* (65 Ohio St. 451).

It would be anomalous indeed to hold that a municipality may plan and build a storm sewer system to collect surface water and channel it into a natural watercourse, with knowledge that the watercourse is insufficient to accommodate the flow during rains which can be reasonably anticipated, and thereby cause continual flooding of lower land, without compensation to the owner, despite the muncipality's liability for causing surface water to flood the property directly, and its liability for failure to use reasonable care in its construction of a hydraulic system in order to prevent injury to others in times of flooding. This anomaly is particularly apparent where, as here, a different design would have averted the flooding. The correct principle of these cases is that a municipal corporation may make reasonable use of a natural watercourse to drain surface water, and will not be liable for incidental damages which may be considered *dammum absque injuria*. It is also not liable for increased flow caused simply by improvement of lots and streets (*Hamilton* v. *Ashbrook* [1900], 62 Ohio St. 511, 57 N. E. 239), nor will it ordinarily be subject to an injunction to prevent the completion of a storm sewer system which will increase the volume and accelerate the flow of water, at least where the exraordinary

remedy of injunction is not warranted by the threat of irreparable damage or the action is not barred by laches. *Munn* v. *Horvitz Co., supra* (175 Ohio St. 521).

But, where a municipality constructs a public improvement, such as a storm sewer system, and thereby effectively takes private property for its own use by casting surface waters upon that property, it must pay compensation for the property taken under Section 19 of the Ohio Bill of Rights. Such a case falls directly within the language of paragraph one of the syllabus of *Norwood* v. *Sheen, supra* (126 Ohio St. 482):

"Any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by Section 19 of the Bill of Rights."

A clear principle of justice requires that the taking of property for the public benefit go hand-in-hand with compensation for the property taken. A similar result has been reached in other states which have considered this question. *Houston* v. *Wall* (Texas Civ. App. 1947), 207 S. W. 2d 664; *Noonan* v. *Albany* (1880), 79 N. Y. 470, 35 Am. Rep. 540; *O'Brien* v. *St. Paul* (1872), 18 Minn. 176; *Daley* v. *Watertown* (1906), 192 Mass. 116, 78 N. E. 143. But cf. *Perry* v. *Wichita* (1953), 174 Kan. 264, 255 P. 2d 667.

The judgment of the Court of Appeals, reversing the dismissal of the complaints and remanding the cause to the Court of Common Pleas for further proceedings, is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CELEBREZZE and W. BROWN, JJ., concur. HERBERT, J., concurs in part. CORRIGAN and P. BROWN, JJ., dissent.

HERBERT, J., concurring in part. I would hold that in operating its storm sewer system, the city was engaged in the performance of a proprietary function and was liable in damages for negligence. I do not agree that there was a constructive appropriation of appellees' property.