JENNINGS BUICK, INC., APPELLEE, *v.* CITY OF CINCINNATI, APPELLANT.

(No. 77-1365—Decided December 8, 1978.)

*Messrs. Graydon, Head & Ritchey, Mr. John B. Pinney,* and *Mr. Thomas W. Kahle,* for appellee.

*Mr. Thomas A. Luebbers,* city solicitor, *Mr. Timothy L. Bouscaren* and *Ms. Patricia W. Morrison,* for appellant.

HOLMES, J. The city of Cincinnati appeals, having set forth the following propositions of law:

1. "The Court of Appeals is bound by *stare decisis* to follow established precedent which holds that a plaintiff cannot recover for injury from a water main break unless he proves by a preponderance of the evidence that the water supplier was negligent."

2. "The maintenance by a city of over three thousand miles of water mains is not an inherently dangerous activity to which the doctrine of strict liability would apply."

3. "Before a water supplier can be held strictly liable for a break in a water main, the court must determine that operation of the water system is inherently dangerous."

There was no appeal by the city on the issue of *res ipsa loquitur* in that the Court of Appeals had dismissed that issue. Also, there was no cross-appeal by the plaintiff here on the issue of *res ipsa loquitur*. Therefore, the issue of whether the trial court should have charged the jury upon the doctrine of *res ipsa loquitur* is not before us in the stance of this appeal.

At the trial hereof, the facts that were adduced were that the plaintiff is an operator of an automobile agency

located at 7707 Vine Street in the city of Cincinnati, Ohio, and that a 12-inch city water main, which was laid in the street in front of such business establishment, had broken and released a significant quantity of water into the show-room of the plaintiff occasioning extensive damage.

The evidence showed that the 12-inch cast iron water main was the same type that had been utilized through-out many miles of water system lines in the city of Cin-cinnati. Further, this main had been installed in 1926 in the area and a section of this main, at or about the loca-tion of the section which had burst, had been repaired on December 6, 1970, when a leak had appeared. The plaintiff argued at trial that the repair conducted in 1970 had been improperly carried out which resulted in the break some four months later. The plaintiff produced one Mr. William S. Kolwolski, an expert, who testified that the break in the main could have been occasioned by improper method of repair and backfill as utilized by the city, but that there were also other causal factors which have been known to occasion failure of water mains.

The defendant city introduced an expert from the Cast Iron Pipe Research Association, Mr. W. Harry Smith, who testified that there is no reasonable method of inspec-tion of underground water mains to predetermine whether a pipe might rupture.

Also, Smith testified that the city had used the ap-propriate method of repairing the water main in 1970, and that the city had properly backfilled the area under and around the pipe in order to give it proper support.

Additionally, the city introduced the testimony of Mr. Charles Bolton, the superintendent of the Cincinnati Water-works, who also testified as to the utilization of the proper method of repair and backfill of the water main in ques-tion.

I.

Appellant, in its basic proposition of law here pre-sented, in essence urges that the correct legal principle to apply to this type of case, alleging damage occasioned by

water escaping from a city water main, is that a party alleging such damage should not prevail unless there is a preponderance of evidence that the city was negligent. Further, the appellant argues that the Court of Appeals improperly interpreted the established law of Ohio in holding the city responsible on a standard of strict liability.

The parties in their briefing of the issues in the Court of Appeals, and within this court, and the Court of Appeals within its opinion, cite a number of cases from Ohio and other jurisdictions which they advance as being controlling.

The historic English case of *Fletcher* v. *Rylands* (1866), L. R. 1 Exch. 265, affirmed *Rylands* v. *Fletcher* (1868), L. R. 3 H. L. 330, is cited by the plaintiff as establishing the basic foundation of strict liability upon which this case should rest. The legal principle enunciated in *Fletcher* v. *Rylands,* a case where the defendant had constructed a reservoir in his land, and water escaped through coal mining excavations resulting in damage to adjoining property, was stated, at pages 279-280, in the opinion of Blackburn, J., as follows:

"We think the true rule of law is, that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff's default; or perhaps that the escape was the consequence of *vis major,* or the act of God * * *."

The plaintiff argues that the legal principle as set forth in *Fletcher* v. *Rylands* was basically adopted by the Supreme Court of Ohio in the case of *Barberton* v. *Miksch* (1934), 128 Ohio St. 169. The facts in *Barberton* v. *Miksch* show that the plaintiff landowner claimed damages to his land which had been occasioned by years of seepage or percolation of water that had escaped from a reservoir which had been constructed by the city of Barberton. The perti-

nent law was set forth in paragraphs three and four of the syllabus as follows:

"3. Casting water upon the land of another by seepage or percolation resulting from the construction and maintenance of a reservoir by a municipality as a part of its system for supplying water to its inhabitants, constitutes a trespass.

"4. Liability for damage proximately resulting from such trespass is not dependent upon negligence."

The city of Cincinnati conversely argues that although the principle of strict liability has been applied in Ohio where there was found to be an absolute nuisance such as the escaping water from the reservoir in *Barberton* v. *Miksch, supra,* such principle does not apply to the facts of this case involving a water transmission main. In support of this position, the city of Cincinnati cites the case of *Interstate Sash & Door Co.* v. *Cleveland* (1947), 148 Ohio St. 325. The facts in that case reveal that the plaintiff's property had been damaged when a four-inch water main had burst releasing water upon the lands and buildings of plaintiff.

Chief Justice Weygandt, in his opinion in *Interstate,* expressed the view that the determination of these types of cases turned upon whether the activity of the defendant was one that could be classified as an absolute nuisance or a qualified nuisance. If it could be classified as the former, it would be a nuisance *per se*; if it could be classified as the latter, liability would be dependent upon negligence. The court cited *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426; and *Metzger* v. *Pennsylvania, Ohio & Detroit Rd. Co.* (1946), 146 Ohio St. 406, in this regard.

The court, at page 328, then posed the significant question: "In laying the four-inch water main in West 24th street and thereafter raising the level of a portion of the street by placing thereon dirt, stones, etc., did the defendant city collect and keep on its premises anything inherently dangerous or likely to escape and cause harm?" The court answered this question in the negative with the

following comments: "The plaintiff does not suggest that it was unlawful for the defendant city to lay the four-inch water main in West 24th street. On the contrary, the laying of mains in public streets for the purpose of furnishing water for protection against fire and for the use of the inhabitants is universally recognized as proper, necessary and legal in modern cities. * * * Furthermore, under the circumstances alleged it is not apparent that the four-inch water main was inherently dangerous and likely to burst or that water was likely to escape therefrom and cause harm * * *."

The court then went on, at page 329, to state that the above principle was in conformity with the general rule which is to be found in Ann. Cas. 1916 C, Note at page 1050, that:

" 'Water in an underground pipe is not such a dangerous instrumentality as to require a person so conveying it to confine it at his peril, and no recovery can be had for an injury to property caused by the leakage or bursting of an underground water pipe unless negligence in the construction or maintenance of the pipe is shown.' "

The court pointed out, at page 331, that the opinion in the case of *Taylor* v. *Cincinnati, supra,* had alluded to the court's prior holdings in *Mansfield* and *Barberton* in the following manner:

" 'Strict or absolute liability is always applied where one does anything under his control or direction, to be done, without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights. In such case the actor commits an intentional act involving a culpable wrong. Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, the law of negligence has no application and the rule of absolute liability applies. 4 Restatement of Torts, 405. * * * This court applied the rule in the cases of *City of Mansfield* v. *Balliett,* 65 Ohio St., 451, 63 N. E., 86, 58 L. R. A., 628 (pollu-

tion of stream by casting sewage therein) and *City of Barberton* v. *Miksch*, 128 Ohio St., 169, 190 N. E., 387 (continual and permanent flow of water upon lands of another by percolation from a public reservoir).' "

The law accordingly to be found in *Interstate Sash & Door* v. *Cleveland*, is stated in the syllabus of that case as follows:

"1. As distinguished from a qualified nuisance involving negligence, an absolute nuisance consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault. (Paragraph one of the syllabus in the case of *Metzger* v. *Pennsylvania, Ohio & Detroit Rd. Co.*, 146 Ohio St., 406, approved and followed.)

"2. An absolute nuisance is not shown by alleging that as a part of its waterworks system a municipality maintained a four-inch main in one of its streets; that the level of the surrounding land was raised by reason of the construction of a bridge; that the municipality then raised the level of part of the street by placing thereon a quantity of dirt, stones, etc., to a depth of several feet; that five years thereafter the main burst; and that as a result thereof a huge quantity of dirt, stones and water was thrown down an adjacent hillside and against and into the plaintiff's warehouse, thereby damaging the building and contents."

The Court of Appeals in its decision in this case recognizes the prior holdings of this court in *Barberton* v. *Miksch, supra*, and *Interstate Sash & Door Co., supra*, but concludes that such opinions only had "addressed the question of the proper standard to be applied to two components of a municipal water system, reservoirs and feeder mains, but has not as yet considered the appropriate standard of liability to be applied to high pressure transmission mains."

The Court of Appeals then proceeded to review and adopt the holdings in a number of cases from other juris-

dictions which in effect had applied the standard of strict liability against the cities concerned in instances of bursting of water mains. The court cited, and relied upon, the cases of *Bridgeman-Russell Co.* v. *Duluth* (1924), 158 Minn. 509, 197 N. W. 971, and *Lubin* v. *Iowa City* (1964), 257 Iowa 383, 131 N. W. 2d 765.

The gist of the holding by the Court of Appeals in this case is explained in the following excerpt from the court's decision:

"Here we are dealing with a 12-inch high pressure transmission main. The explosion of this main resulted in a discharge of enormous quantities of water which in turn caused almost immediate and devastating damage to appellant's property. Clearly, an eruption of this type of main with its potential to discharge large quantities of water in a very short period of time creates a substantial risk of harm to adjacent property owners. The damage potential of water escaping from transmission mains as well as reservoirs is very high. The sheer volume of water that can be discharged by a transmission main makes it more akin to a reservoir than to small feeder lines. In fact, we find as did the Minnesota Supreme Court that 'no distinction can be made between water escaping in destructive quantities from a broken reservoir and flooding the premises of an adjacent owner and water escaping from a break in a principal main leading from such reservoir.' * * *"

We must reverse the Court of Appeals. In the first instance, the holding of *Barberton* v. *Miksch, supra,* does not pronounce that a municipality is strictly liable without negligence in all instances of water escaping from a city water facility, even from a reservoir. The law of that case was later interpreted by this court to mean that strict or absolute liability is applied where "the actor commits an intentional act involving a culpable wrong." *Taylor* v. *Cincinnati, supra* (43 Ohio St. 426), at page 432. The intentional act involving a culpable wrong was explained by Chief Justice Weygandt in *Interstate Sash & Door, supra,*

at page 331, as follows: "In the *Barberton* case the known seepage and percolation from the city reservoir over the plaintiff's land continued for more than five years."

Additionally, although the syllabus as well as portions of the opinion in *Interstate Sash & Door, supra,* referred to the size of the water main in that case as being four inches in diameter, we must state here that no distinction was being made upon the basis of the size or specific utility of the water main. The court, at page 329, in quoting the general rule, stated: " 'Water in an underground pipe is not such a dangerous instrumentality as to require a person so conveying it to confine it at his peril' * * *."

To apply different standards of liability solely upon the basis of the size or utility of the water main would result in an artificial and arbitrary distinction. The size, type or functon of the pipe should not be solely relied upon as a basis for determining the standard of liability. The standard of liability should be determined upon the basis of the criteria clearly set forth in *Interstate Sash & Door, supra; i. e.,* Is there an absolute or qualified nuisance being perpetrated by the defendant? In determining if the former is present, a determination must be made whether the actor is knowingly doing an unlawful act; if not, then is the actor engaged in a process or activity which is inherently dangerous or hazardous? Absent evidence that the maintenance of these 12-inch underground water mains constitutes a risk of serious harm and that such mains are not in common usage, the law as previously set forth in *Interstate Sash & Door* should be followed. We have been presented no compelling reason of great public need or urgency to change the law of Ohio in this regard.

It appears from the authorities presented that the majority of states, as well as federal courts, having reviewed the question of the standard of liability to be applied against a municipality in the instance of damages occasioned by the breaking of a city water main, have held the city liable only upon a showng of negligence. A number of such cases in jurisdictions so holding are: *Grace &*

*Co.* v. *Los Angeles* (S. D. Calif., 1958), 168 F. Supp. 344; *Dunn* v. *Boise City* (1929), 48 Idaho 550, 283 P. 606; *A. Deprato Co.* v. *Boston* (1956), 334 Mass. 186, 134 N. E. 2d 438; *A. J. Brown & Son, Inc.* v. *Grand Rapids* (1933), 265 Mich. 465, 251 N. W. 561; *Stein* v. *Newark* (1947), 25 N. J. Misc. 170, 52 A. 2d 66; *Ettlinger* v. *New York* (1908), 58 Misc. 229, 109 N. Y. Supp. 44; *Morgan* v. *Duquesne Borough* (1905), 29 Pa. Super. 100; and *Pacific Northwest Bell Tel. Co.* v. *Port of Seattle* (1971), 80 Wash. 2d 59, 491 P. 2d 1037.

Here, there was no evidence that the operation of this water main was inherently dangerous or hazardous. The evidence that was adduced was presented in support of the allegation of the negligence of the city of Cincinnati in the installation, maintenance and repair of the water main. The jury upon consideration of the evidence upon the issue of negligence, returned its verdict for the defendant city of Cincinnati. The Court of Appeals erred in reversing the trial court on this issue.

As previously stated, the issue of whether or not the trial court erred to the prejudice of Jennings Buick, Inc., in not charging the jury upon the doctrine of *res ipsa loquitur*, is not specifically before us.

This issue was not presented to this court upon appeal due to the manner in which the assignments of error were handled in the Court of Appeals. Appellee presented a request to the trial court to charge on *res ipsa loquitur* which was refused. This refusal was the subject of appellee's second assignment of error in the Court of Appeals. The Court of Appeals *overruled* this second assignment of error but did so on the basis that it had already determined that the doctrine of strict liability applies. In general language it nevertheless expresses the opinion that the doctrine of *res ipsa loquitur* is applicable in suits against a city for damages resulting from a break in a water main.

Although the proper procedure to assert any claim of error in *overruling* the second assignment of error by the Court of Appeals would have been to file a cross-appeal, and to brief and argue such issue in this court, we nevertheless

*sua sponte* remand the cause to the Court of Appeals for redetermination of the second assignment of error in light of this court's opinion, and for a determination of whether the refusal of the trial court to give the requested charge constitutes prejudicial error.

*Judgment reversed and cause remanded.*

LEACH, C. J., HERBERT, SWEENEY and STEPHENSON, JJ., concur.

CELEBREZZE and W. BROWN, JJ., dissent.

HOLMES, J., of the Tenth Appellate District, sitting for P. BROWN, J.

STEPHENSON, J., of the Fourth Appellate District, sitting for LOCHER, J.