[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 529.]

THE STATE EX REL. ELSASS ET AL., APPELLANTS, *v.* SHELBY COUNTY BOARD OF COMMISSIONERS ET AL., APPELLEES.

[Cite as *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.,* 2001-Ohio-1276.]

*Mandamus—Appropriation proceedings—Drainage project—Neither petitioning for public improvement nor paying assessments related to the improvement precludes landowners from seeking compensation for the taking of their property in connection with the project—Cause remanded to permit property owners to establish loss of any economically viable use.*

(No. 00-2051—Submitted June 20, 2001—Decided August 15, 2001.)

APPEAL from the Court of Appeals for Shelby County, No. 17-99-17.

_____

*Per Curiam.*

{¶ 1} Appellant Robbie May Elsass has a life estate, and her son and daughter-in-law, appellants Murray E. Elsass and Janet E. Elsass, have a remainder as tenants in common in real property located in Dinsmore Township, Shelby County, Ohio, which is within the Shelby Soil and Water Conservation District ("district"). Appellants lease the property to others for agricultural purposes, *i.e.*, growing crops. The Elsass property is located in the southeast area of a watershed in which rain falling in the area generally flows from the northwest to the southeast and drains into Loramie Creek, the eastern boundary of the Elsass property.

{¶ 2} Around 1990 or 1991, Timothy A. Byrd, the drainage coordinator for the district, received complaints from Clarence King and his wife about a standing water problem on their property, which is located northwest of and upstream from appellants' property. A lack of maintenance of a downstream area of the watershed that is upstream from appellants' property, including a rotted culvert pipe underneath a driveway on the King property, caused much of the flooding problem.

At that time, appellants had both surface and subsurface drains on their property, and they claim that they had no drainage problem during this period.

{¶ 3} In response to the complaints, Byrd contacted the property owners in the watershed, and a meeting was held in September 1993. Because the property owners could not agree about forming a private group to rectify the drainage problems in the watershed, Byrd advised them to petition the district. The property owners, including appellant Murray E. Elsass, then signed a petition requesting that the district assist them in the planning and construction of works of improvement needed to "[i]mprove drainage an[d] reduce flooding" in the watershed. Although no construction plans had been drafted for the project at the time the petition was signed, Byrd explained to the property owners present at the meeting, including appellant Murray E. Elsass, that new surface and subsurface drains would have to be constructed on the property. On September 21, 1993, the district, through its board of supervisors, approved the project, which was known as the King-Elsass Ditch Drainage Improvement Project ("project").

{¶ 4} The project was placed on a waiting list until 1997, and in July 1997, the district board of supervisors held a public meeting concerning the project. At this meeting, the details of the project were discussed. Appellant Murray E. Elsass attended the meeting and did not object to the proposed project.

{¶ 5} On August 19, 1997, the board of supervisors of the district certified the project to appellee Shelby County Board of Commissioners ("board"). In accordance with R.C. 1515.20 through 1515.24, the board determined that construction of the project would improve water management and development of the lands therein, that the costs of the project would be less than the benefits, and that the project would benefit the land by promoting its economic, agricultural, and social development. The purpose of the project was to relocate the surface flow of water in the area by correcting drainage conditions upstream from appellants'

property and channeling water through appellants' property and into the creek through a drainage pipe.

{¶ 6} On December 11, 1997, the board accepted the project as certified by the district and as recommended by the county engineer. The board authorized the advertisement and legal notice for bids to perform the work required for the project, which included the installation of about one thousand four hundred feet of corrugated plastic tubing and the construction of approximately 1,375 feet of surface drain and various erosion-control structures. The board subsequently awarded the contract to Ruhenkamp Farm Drainage, Inc. for approximately $26,000. The board then assessed property owners in the watershed to pay for the cost of the project pursuant to R.C. 1515.24. Appellants were assessed approximately $1,518.

{¶ 7} At the request of appellant Murray E. Elsass, Ruhenkamp Farm Drainage, Inc. waited for appellants' tenant to harvest his crops before it began construction of the project in mid-August 1998. Appellees, the board and the individual commissioners, did not obtain an easement, right-of-way, or license from appellants before constructing the project. During the construction, the contractor entered appellants' property and installed surface and subsurface drains across and under the property. The surface drain or swale constructed on appellants' property is approximately eight hundred fifty feet long and fifty feet wide, with a maximum depth of two and a half feet. The preexisting surface drain on appellants' property was straightened and deepened to make it easier to farm through and across the drain. The contractor also constructed a subsurface drain that followed the approximate path of the old underground drain on appellants' property and a rock shoot that emptied into Loramie Creek.

{¶ 8} During the construction of the project, appellants did not complain about it, and Byrd explained to appellant Murray E. Elsass what the project would look like upon its completion. The contractor complied with appellant Murray E.

Elsass's request to correct a farm driveway so that appellants' tenant would not tip his farm equipment. The project was completed in September 1998. The board paid the contractor after it was satisfied that the project was completed in accordance with plans presented by the district and the county engineer. Under R.C. 1515.29, the board has a continuing duty to maintain the completed improvement.

{¶ 9} In October 1998, appellant Murray E. Elsass, through counsel, asserted that the drainage project had resulted in a "taking" of his real property and requested that the board compensate him. Appellants had not objected to the construction of the project before that time. Appellees refused to initiate appropriation proceedings or otherwise compensate appellants for their use of appellants' property in the construction of the project.

{¶ 10} In July 1999, appellants filed a complaint in the Court of Appeals for Shelby County for a writ of mandamus to compel appellees to institute appropriation proceedings for the uncompensated taking of their property in connection with the project and for other relief. Appellees filed an answer claiming that appellants consented to the construction of the project and were therefore estopped from claiming damages from the county. In October 1999, the court of appeals ordered the parties to file all evidence on or before November 15, 1999.

{¶ 11} On the date specified by the court, the parties submitted evidence. According to appellants' evidence, construction of the project on their property limited access to a bridge crossing Loramie Creek, concentrated the flow of water in specific areas of appellants' property, and diminished crop yields. In addition, appellant Murray E. Elsass specified that construction of the project limited appellants' ability to use their real property for nonagricultural purposes and inhibited future development. Conversely, appellees' evidence indicated that appellants' property was benefited by the project and that there was no limitation of access.

**{¶ 12}** The court of appeals subsequently granted the parties' motions to submit additional evidence and to extend the time to file briefs. The additional evidence submitted by appellants included a November 1999 appraisal of the ditch project concluding that the highest and best use of the property, presently zoned "U-1 rural district," is its current agricultural use, that the project did not damage the residue of appellants' property, and that, at most, there could be a possible loss of $100 in crop yield in 1999 attributable to the project.

**{¶ 13}** The parties filed briefs in December 1999, and in May 2000, appellants filed a motion for leave to submit additional evidence. The evidence consisted of photographs purporting to depict appellants' property at that time, *i.e.*, after the crops had been harvested. The court of appeals denied appellants' May 2000 motion to submit this additional evidence.

**{¶ 14}** In October 2000, the court of appeals denied the writ, concluding that any physical invasion of appellants' property occurred with their consent and by their invitation, that no fundamental attribute of appellants' ownership of their property was destroyed by the project, and that appellants' property still had an economically viable use.

**{¶ 15}** This cause is now before the court upon the Elsasses' appeal of right, as is their request for oral argument.

Oral Argument

**{¶ 16}** Appellants request oral argument, claiming that this appeal raises a substantial constitutional issue regarding the taking of private property without just compensation and is a matter of great public importance concerning the applicable standard to be applied in inverse condemnation cases.

**{¶ 17}** We deny appellants' request. We have resolved comparable cases without the necessity of oral argument. See, *e.g., State ex rel. BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 699 N.E.2d 1271. And more important, the

parties' briefs are sufficient to resolve this appeal. See *State ex rel. Abner v. Elliott* (1999), 85 Ohio St.3d 11, 16, 706 N.E.2d 765, 769.

Submission of Evidence

**{¶ 18}** Appellants contend that the court of appeals erred in denying their motion for leave to submit additional evidence outside the timetable set by the court for the submission of evidence. The admission of evidence is normally within the discretion of the trial court, and the court's decision will be reversed only upon a showing of an abuse of that discretion. *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290, 292; see, also, *State v. Jalowiec* (2001), 91 Ohio St.3d 220, 229, 744 N.E.2d 163, 174 ("Under Evid.R. 403, the admission of photographs and similar evidence is left to the sound discretion of the trial court"). The term "abuse of discretion" means an unreasonable, arbitrary, or unconscionable decision. *State ex rel. Stevens v. Geauga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 223, 226, 736 N.E.2d 882, 884.

**{¶ 19}** No abuse of discretion is evident here. Instead, the court of appeals properly denied appellants' motion for leave to submit additional evidence because it was filed approximately six months after the court-ordered deadline for evidence and five months after the parties filed their briefs, and appellants made no attempt to authenticate the photographs. See Evid.R. 901(A); *Heldman v. Uniroyal, Inc.* (1977), 53 Ohio App.2d 21, 31, 7 O.O.3d 20, 25, 371 N.E.2d 557, 564 ("There must be testimony that the photograph is a fair and accurate representation of that which it represents"): see, generally, 2 Giannelli & Snyder, Evidence (1996) 283-284, Section 901.17.

Mandamus and Appropriation

{¶ 20} In their main propositions of law, appellants assert that the court of appeals erred in denying their requested writ of mandamus to compel the board and its commissioners to commence appropriation proceedings.

{¶ 21} The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged. *BSW*, 83 Ohio St.3d at 341, 699 N.E.2d at 1274; *State ex rel. McKay v. Kauer* (1951), 156 Ohio St. 347, 46 O.O. 204, 102 N.E.2d 703, paragraph three of the syllabus. Appellants have the burden of proving entitlement to the requested extraordinary relief in mandamus. *State ex rel. Sekermestrovich v. Akron* (2001), 90 Ohio St.3d 536, 537, 740 N.E.2d 252, 254.

{¶ 22} " 'In cases of either physical invasion of the land or the destruction of a fundamental attribute of ownership like the right of access, the landowner need not establish the deprivation of *all* economically viable uses of the land.' " *Id.* at 537-538, 740 N.E.2d at 254, quoting *BSW*, 83 Ohio St.3d at 342, 699 N.E.2d at 1275. But in other cases, which generally involve a claimed regulatory taking, the landowner must prove that the taking deprived *all* economically viable uses of the land. *Id.* at 343, 699 N.E.2d at 1275-1276.

{¶ 23} The court of appeals held that the latter standard applied because there was no physical invasion of appellants' land, since appellants had consented to the project and, in fact, had invited the county to construct the improvement. The court of appeals further held that the project did not destroy any fundamental attribute of appellants' ownership because the land is used for the purpose that it had before the taking.

{¶ 24} In effect, the court of appeals concluded that by petitioning for the public improvement, paying assessments relating to the improvement, and failing to object to it until after its completion, appellants are estopped from seeking compensation for the taking.

{¶ 25} The court of appeals erred in so determining. It is well settled that while acquiescence by the owner to occupation of his land for a public use without compensation in advance and without the institution of condemnation proceedings may preclude him from recovering possession of the land, it does not constitute a waiver of the right to recover compensation for the taking. See, generally, 3 Nichols on Eminent Domain (3 Ed.Rev.2000) 8-157, Section 8.20[2]; *Harris v. Hot Springs Bd. of Cty. Commrs.* (1956), 76 Wyo. 120, 126, 301 P.2d 382, 384.

{¶ 26} We have similarly held that the property owner retains a right to be compensated for a taking in connection with a public improvement. See *Goodin v. Cincinnati & Whitewater Canal Co.* (1868), 18 Ohio St. 169, 1868 WL 15, paragraph one of the syllabus, where we held that a landowner "who stands by, without objection, and sees a public railroad constructed over [his land], cannot, after the road is completed, or large expenditures have been made thereon upon the faith of his apparent acquiescence, reclaim the land, or enjoin its use by the railroad company," but he may still have "a right of compensation." See, also, *Cincinnati v. Kemper* (1877), 7 Ohio Dec.Rep. 251, 1877 WL 5874.

{¶ 27} In addition, R.C. 1515.08(C), as made applicable to boards of county commissioners under R.C. 1515.21, authorizes boards that "acquire, by purchase or gift, * * * to hold, encumber, or dispose of and * * * lease real and personal property or interests" to construct water development and management improvements. The board did not acquire appellants' property by gift, purchase, or appropriation here. Cf. 1984 Ohio Atty.Gen.Ops. No. 84-021.

{¶ 28} More specifically, neither petitioning for the public improvement nor paying assessments related to the improvement precludes landowners from

8

seeking compensation for the taking of their property in connection with the project. See *Turner v. Stanton* (1880), 42 Mich. 506, 507, 4 N.W. 204, 204-205 ("But there was nothing in the petition which waived compensation for any land of the petitioners which might be taken, and it is perfectly consistent with the petition that the petitioners expected to be paid if their land was taken; and they had a right to be paid, beyond question"); *Lewis v. Burgess* (1895), 166 Pa. 613, 614, 31 A. 335, 336 (no waiver or estoppel regarding claim for damages in taking for a public purpose even though the property owner requested the public improvement); *Gray v. Salt Lake City* (1914), 44 Utah 204, 224, 138 P. 1177, 1184 (no estoppel from maintaining action for damages to property where landowners did not object or protest the special tax levied against them for the improvement).

{¶ 29} Therefore, appellants were not estopped from claiming damages for appellees' entry onto their land, construction of the drainage improvement project, and the board's right under R.C. 1515.29 to continue to enter and maintain a portion of appellants' property. Equitable estoppel generally requires actual or constructive fraud, and appellants never represented to appellees that they would forfeit their right to seek compensation for the taking of land in connection with the project. See *State ex rel. Richard v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund* (1994), 69 Ohio St.3d 409, 414, 632 N.E.2d 1292, 1296; *State ex rel. Ryan v. State Teachers Retirement Sys.* (1994), 71 Ohio St.3d 362, 368, 643 N.E.2d 1122, 1128.

{¶ 30} Therefore, for purposes of determining if a constitutional taking occurred, we find that appellees physically invaded appellants' property by entering their land and constructing surface and subsurface drainage systems as well as a rock shoot on it. Furthermore, R.C. 1515.29 affords appellees certain rights in appellants' property. The standard that was used by the court of appeals for determining whether compensation to property owners is warranted is normally

applicable to regulatory taking cases, which this case is not. Cf. *BSW*, 83 Ohio St.3d 338, 699 N.E.2d 1271.

**{¶ 31}** Consequently, appellants needed to establish only the loss of *any* economically viable use, not just its present agricultural use. See *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 207, 667 N.E.2d 8, 12, quoting *Mansfield v. Balliett* (1902), 65 Ohio St. 451, 471, 63 N.E. 86, 92 (" 'To deprive [the landowner] of any valuable use of his land, is to deprive him of his land, *pro tanto*. * * * [T]he principle of the constitution is as applicable where the owner is partially deprived of the uses of his land, as where he is wholly deprived of it. Taking a part is as much forbidden by the constitution as taking the whole.' "). Because the court of appeals did not decide this issue, we reverse the judgment and remand the cause to that court for such determination.[1] We deny appellants' request for attorney fees.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

---

1. Although it is true that reviewing courts defer to a lower court's factual determinations if they are supported by competent, credible evidence, *BSW*, 83 Ohio St.3d at 344, 699 N.E.2d at 1276, the court of appeals did not determine whether appellants had established the loss of any economically viable use due to its erroneous conclusion that no physical invasion or destruction of a fundamental attribute of ownership had occurred. But it should be noted that on other evidentiary matters, competent, credible evidence supports the court of appeals' factual determinations, express and implicit to its holding, that the project did not impair appellants' right of access to a bridge on their property and did not cause flooding of their property. In this regard, appellants' reliance on cases involving flooding caused by public improvements is misplaced. Cf. *Masley v. Lorain* (1976), 48 Ohio St.2d 334, 2 O.O.3d 463, 358 N.E.2d 596; *Lucas v. Carney* (1958), 167 Ohio St. 416, 5 O.O.2d 63, 149 N.E.2d 238.

**LUNDBERG STRATTON, J., dissenting.**

{¶ 32} I dissent and would affirm the judgment of the court of appeals that appellants are not entitled to a writ of mandamus.

PFEIFER, J., concurs in the foregoing dissenting opinion.

———————————

*Elsass, Wallace, Evans, Schnelle & Co., L.P.A.*, and *Stanley R. Evans*, for appellants.

*James F. Stevenson*, Shelby County Prosecuting Attorney, and *Michael F. Boller*, Assistant Prosecuting Attorney, for appellees.

———————————