JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated appeal, appellants Marvin Loper ("Loper") and Rawn Nash ("Nash") appeal their convictions and sentences entered after a jury trial in the Cuyahoga County Court of Common Pleas. Nash also appeals the trial court's decision to deny his motion for a new trial or, in the alternative, petition for postconviction relief.
 {¶ 2} Loper was convicted of possession of drugs in violation of R.C. 2925.11; possession of drugs (major drug offense) in violation of R.C. 2925.11; and possession of criminal tools in violation of R.C.2923.24. Loper argues his conviction was against the manifest weight of the evidence.
 {¶ 3} Nash was convicted of possession of drugs (major drug offense) in violation of R.C. 2925.11. Nash assigns error to several evidentiary rulings at trial, a jury instruction on constructive possession, the denial of his motion for judgment of acquittal, and the verdict as being against the manifest weight of the evidence. Nash also argues the trial court erred by denying his motion for a new trial or, in the alternative, petition for postconviction relief, without conducting an evidentiary hearing.
 {¶ 4} This court has reviewed the record and finds no error in the appeals of Loper and Nash from their convictions. We also find the trial court did not have jurisdiction to consider Nash's motion for a new trial and there was no final appealable order on the petition for postconviction relief. Therefore, Case Nos. 81297 and 81400 are affirmed, and Case No. 81878 is affirmed in part and dismissed in part.
 {¶ 5} The facts, as adduced at the jury trial, are as follows.
 {¶ 6} On July 24, 2001, Detective Jeff Follmer of the Cleveland Police Department set up surveillance of 4369 Woodland Avenue, a CMHA public housing unit, in anticipation of executing a search warrant for illegal drugs. Detective Follmer watched the unit from the parking lot of a bank located across the street.
 {¶ 7} During the surveillance, Detective Follmer observed Loper and another man, who was later identified as Henry Witherspoon, approach the premises. Loper opened the door to the unit, and the two men went inside.
 {¶ 8} A short time later, Detective Follmer observed Witherspoon exit the unit and proceed westbound towards East 40th Street and the Longwood Estate area. Witherspoon returned after a few minutes and re-entered the unit. Detective Follmer then decided to call for assistance in order to execute the search warrant. Detective Follmer called detectives David Thompson, Randy Ramsey, and Thomas Assano of the Cuyahoga Metropolitan Housing Authority ("CMHA"), along with Cleveland police detectives Michael Demchak and Sam Morris.
 {¶ 9} While waiting for the other detectives to arrive, Detective Follmer observed two other males enter the unit. The two men were later identified as Nash and William Anglen. After the CMHA detectives arrived, they observed Witherspoon leaving the unit again and attempted to apprehend him. Detective Thompson stated that when Witherspoon saw the detectives, a shocked look came over his face and he immediately ran back into the premises.
 {¶ 10} Detective Thompson chased Witherspoon up to a bedroom on the top floor of the apartment unit, at which point Detective Thompson observed Witherspoon discard some objects into a bag located in a small closet or cubbyhole. Detective Thompson apprehended Witherspoon and advised him of his rights. The bag that was retrieved from the closet contained two smaller bags of crack cocaine, one containing crumbs weighing .55 grams and the other containing rocks weighing 8.42 grams, and a vial containing 9.80 grams of PCP.
 {¶ 11} Detective Ramsey had followed Detective Thompson into the unit and observed three men, Anglen, Nash and Loper, in the kitchen. He also saw a rock of crack cocaine lying on the sink. Detective Ramsey instructed the three males to hit the floor and advised them they were under arrest.
 {¶ 12} When Detective Follmer entered the unit, he saw the three men on the floor in the kitchen along with a puppy. When he searched Loper, he found approximately $140 and a set of keys that were later found to fit the front door of the unit. Approximately $16 was found on Nash. No drugs were found on Nash or Loper. Detective Follmer later learned that the leaseholder was not living at the apartment unit at the time the search warrant was executed.
 {¶ 13} When Detective Demchak arrived on the scene, he saw a "phenomenal" amount of crack cocaine on the kitchen sink next to a razor blade with residue on it. Detective Demchak testified that this indicated to him "that they were just cutting the crack cocaine up." The crack cocaine on the sink was determined to weigh 120.93 grams.
 {¶ 14} In addition to the drugs already mentioned, a search of the premises uncovered the following: a vial of 17.74 grams of PCP in the freezer; two empty vials with PCP residue inside a shoe in the kitchen; two more vials of PCP weighing a total of 20.53 grams in a refrigerator drawer; a large bag containing several smaller bags with huge pieces of crack cocaine weighing a total of 96.55 grams in a vegetable bin; seven MDMA (ecstacy) pills and a bag of 3.22 grams of crack cocaine, including crumbs and one larger rock, inside an oven mitt hanging on the kitchen wall; and an electronic scale and a second razor on a saucer, both with cocaine residue, on top of a kitchen cupboard. Also, two vials of PCP, one weighing 16.40 grams and the other weighing 16.94 grams, were found under a headboard in a bedroom.
 {¶ 15} Loper, Nash, Witherspoon, and Anglen were all charged together in a seven-count indictment containing multiple drug offenses. A joint trial was scheduled for appellants Loper and Nash.
 {¶ 16} Prior to the start of the joint trial for Loper and Nash, the trial court, sua sponte, dismissed the original counts three, four and six, which alleged violations of R.C. 2925.03, preparation of drugs for sale. The remaining counts were renumbered to include: count one, possession of PCP between five and fifty times the bulk amount, in violation of R.C. 2925.11; count two, possession of crack cocaine in an amount greater than one hundred grams, in violation of R.C. 2925.11, with a major drug offender specification under R.C. 2929.1410; count three, possession of MDMA in an amount less than bulk, in violation of R.C.2925.03; and count four, possession of criminal tools, in violation of R.C. 2923.24.
 {¶ 17} During the trial, Witherspoon and Anglen were called as witnesses on behalf of the state, as were detectives Thompson, Ramsey, Demchak and Follmer. The detectives testified to the events and observations already discussed.
 {¶ 18} Witherspoon testified that, on July 24, 2001, he and Loper went to the apartment unit at 4369 Woodland Avenue. Loper had the key to the door. Once inside, Loper went into the kitchen and got a piece of dope for Witherspoon to take to someone in the East 40th Street projects. Witherspoon delivered the dope and returned to the apartment.
 {¶ 19} Upon his return, Loper instructed Witherspoon to clean up the puppy mess, and Witherspoon complied. Loper then got Witherspoon "some water and some dope and a shake bag" from the refrigerator and told Witherspoon that the "shake bag" was for him. Witherspoon explained that "water" is PCP, "dope" is crack cocaine, and "shake" is the leftover from cutting up the crack cocaine. Witherspoon put the shake bag in his pocket and later testified that he was to sell the PCP and crack cocaine on the street for Loper.
 {¶ 20} While Loper and Witherspoon were getting ready to leave the apartment, Nash and Anglen arrived. Nash asked Witherspoon if he had a crack pipe, but he did not. Witherspoon testified that Nash then gave him a piece of Nash's "soda dope," which is a cheap kind of crack cocaine, and told Nash to try it.
 {¶ 21} Witherspoon went outside the apartment to try the dope. On his way outside, Witherspoon saw that police were approaching him. Witherspoon went running back into the apartment to the third floor, where he discarded the dope and was arrested. Witherspoon told the detective that it was Loper's dope.
 {¶ 22} Witherspoon was eventually seated on the couch next to Nash. Witherspoon testified that he noticed Nash had a bag in his pocket that the dope came in. Witherspoon stated he pulled the bag out of Nash's pocket and pushed it down into the couch for him.
 {¶ 23} Witherspoon was tried and convicted of three offenses and was awaiting sentencing at the time he testified at the trial of Loper and Nash. Witherspoon testified to having eight prior felony convictions. He stated that he had met with the prosecutor after he was convicted and was hoping his agreeing to testify might help with his sentencing. Witherspoon testified that he was not trying to please the prosecutor with his testimony and that he was telling the truth.
 {¶ 24} Witherspoon was also questioned about a written statement he made to the police the day after he was arrested. The statement provided an account of July 24, 2001, relating to cleaning up the puppy mess and taking out the trash, without any mention of getting drugs from Loper or any reference to Nash. Witherspoon testified that the written statement was not entirely truthful. Witherspoon indicated that when he made the statement, he was sharing a jail pod with Loper and Nash, that he was afraid of Loper and Nash, that Loper told him to "make something up" to cover Loper, and that he did not mention Nash because he did not want to get "beat up."
 {¶ 25} Anglen also testified for the state. Anglen first testified about his criminal record. He indicated that he entered a plea of guilty to lesser charges relative to the July 24th incident and had entered a plea agreement in which he would receive a sentence of two and one-half years in exchange for his testimony.
 {¶ 26} Anglen then testified that on July 24, 2001, Nash asked him to go for a ride. They stopped at a house off Kinsman and Nash went inside. Nash returned to the vehicle with a bag of crack cocaine, and the two men then went to the apartment where Witherspoon and Loper were located. Anglen stated Nash pulled the bag of cocaine out of his pocket, placed it on the kitchen counter, identified it as A-1 crack cocaine, and offered a piece to Witherspoon for him to try. Anglen also stated the crack cocaine that Nash placed on the counter was flat on the counter, out of the bag. A pack of Newport cigarettes was next to the crack, and Anglen testified that Nash had given him a Newport cigarette.
 {¶ 27} Anglen proceeded to testify that shortly thereafter, Witherspoon came running back into the unit with the police behind him. Detective Ramsey told the men in the kitchen to put their hands up and told them to lie down where they were standing. Anglen also stated that a puppy, belonging to Loper, was tied to the radiator in the kitchen.
 {¶ 28} Anglen further testified that after he was placed in a chair across from Nash and Witherspoon, he saw Witherspoon take a plastic bag out of Nash's pocket and stuff it in the couch. Anglen claimed that during the course of events that day, he did not see Loper holding any drugs or giving drugs to anyone.
 {¶ 29} At the conclusion of the state's case, Nash and Loper each made a motion for judgment of acquittal. The court denied Loper's motion entirely, and denied Nash's motion as to counts one, two, and four only, but granted Nash's motion as to count three covering possession of MDMA.
 {¶ 30} The jury found Loper guilty of all counts except the possession of MDMA. The trial court sentenced Loper to seven years for count one, possession of PCP; the mandatory ten years for count two, possession of crack cocaine; and eleven months for count four, possession of criminal tools. All terms were to run concurrently with each other, but consecutive to any sentence imposed by the parole board. The trial court did not add any additional sentence as authorized by the major drug offender specification on count two.
 {¶ 31} The jury found Nash guilty on count two, for possession of crack cocaine in an amount exceeding one-hundred grams, and not guilty on counts one and four. The trial court imposed the mandatory sentence of ten years to be served consecutive with any sentence imposed by the parole board. The trial court did not add any additional sentence as authorized by the major drug offender specification. Nash filed a motion for new trial or, in the alternative, petition for postconviction relief. The trial court, without a hearing, denied the motion for new trial.
 {¶ 32} Three separate appeals were filed. Case number 81297 is Loper's direct appeal from his conviction; case number 81400 is Nash's direct appeal from his conviction; and case number 81878 is Nash's appeal from the trial court's denial of his motion for a new trial or, in the alternative, petition for postconviction relief. Because the appeals arose from a case in which the appellants received a joint trial, the cases were consolidated for hearing and disposition on appeal.
 {¶ 33} Nevertheless, separate appellate briefs have been filed in each case. Therefore, this court shall address the assignments of error raised in each case individually.
 CASE NUMBER 81297 {¶ 34} Case number 81297 is Loper's direct appeal from his conviction. In his appeal, Loper raises one assignment of error stated as follows:
 {¶ 35} "I. The conviction of Marvin Loper was against the manifest weight of the evidence."
 {¶ 36} In reviewing a claim challenging the manifest weight of the evidence, we are directed as follows: "`[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 37} Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin,20 Ohio App.3d at 175.
 {¶ 38} The statutes under which Loper was convicted provide:
 {¶ 39} "R.C. 2925.11 Possession of drugs. (A) No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 40} "R.C. 2923.24 Possessing criminal tools. (A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 41} A person acts knowingly, regardless of his or her purpose, when that person is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). It is necessary to look at all the attendant facts and circumstances in order to determine if a defendant knowingly possessed a controlled substance. State v. Teamer (1998), 82 Ohio St.3d 490, 492. Possession is defined as having "control over a thing or substance," but it may not be inferred, however, solely from "mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 42} Here, Loper argues the evidence failed to establish that he possessed the drugs and criminal tools. Loper asserts four people were present in the apartment when the police arrived, no drugs or criminal tools were found on him, and the drugs were discovered in the general living area. As such, Loper claims that his conviction was based on mere speculation.
 {¶ 43} There is no dispute that Loper did not have actual possession of the drugs or criminal tools. Nonetheless, possession can be constructive. See State v. Wolery (1976), 46 Ohio St.2d 316, 329; Statev. Haynes (1971), 25 Ohio St.2d 264, 267; State v. Barr (1993),86 Ohio App.3d 227, 235. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, at the syllabus.
 {¶ 44} Moreover, proof by circumstantial evidence is sufficient to support constructive possession. See State v. Jenks (1991),61 Ohio St.3d 259, 272-73. As such, readily usable drugs or other contraband in close proximity to a defendant may constitute sufficient and direct circumstantial evidence to support a finding of constructive possession. State v. Pruitt (1984), 18 Ohio App.3d 50, 58.
 {¶ 45} Applying the foregoing, we note that the state's evidence demonstrated that Loper was found in the kitchen where many of the drugs and criminal tools were confiscated. Therefore, the drugs and criminal tools were in close proximity to Loper. The mere fact that others were in the apartment does not mean that Loper could not exercise dominion and control over the drugs and criminal tools.
 {¶ 46} There was also evidence demonstrating that Loper exercised dominion and control over the apartment where the drugs and criminal tools were found. A key to the apartment was found on Loper, Detective Follmer observed Loper opening the door to the unit, and the puppy in the apartment belonged to Loper. Within the apartment, drugs were found in the refrigerator, in an oven mitt, and under a headboard in a bedroom. The total amount of crack cocaine found was more than 100 grams, and thus, was sufficient to meet the major drug offender specification under R.C.2941.1410. Additionally, the state presented testimony from Witherspoon that indicated the drugs belonged to Loper. Witherspoon testified Loper gave him the drugs that he discarded in the bedroom closet. Witherspoon stated Loper got the crack cocaine and the PCP from the refrigerator, and Witherspoon was to sell those drugs on the street for Loper. Witherspoon also testified Loper gave him a bag of shake for his own use.
 {¶ 47} Loper argues Witherspoon's testimony about Loper giving him drugs was inconsistent with Witherspoon's prior written statement, which did not make any mention of getting drugs from Loper or selling drugs for him. Loper also states Witherspoon's testimony was inconsistent with Anglen's testimony. Anglen testified he never saw Loper with any drugs. Further, Loper claims the testimony of Witherspoon was unreliable because he was a known drug hustler who had a personal interest in a reduced sentence.
 {¶ 48} Although the testimony of Witherspoon at trial differed from his prior written statement and the testimony of Anglen, Loper's counsel ably cross-examined Witherspoon and drew the discrepancies to the attention of the jury. Since the weight to be given evidence and the credibility of witnesses are primarily for the trier of fact, it is evident that the jury chose to believe Witherspoon's testimony at trial was truthful. While this court may consider the credibility of witnesses in reviewing the record, we accord due deference to the jurors' judgments since the jury had the opportunity to view the witnesses' testimony and adjudge their credibility.
 {¶ 49} In considering the attendant facts and circumstances discussed above, a rational trier of fact could have found Loper knowingly exercised dominion and control over the drugs and criminal tools, even though they were not in his immediate physical possession. It was, therefore, reasonable for the jury to conclude Loper had constructive possession of the drugs and criminal tools confiscated from the kitchen and bedrooms.
 {¶ 50} In the present case, the jury was faced with weighing the evidence presented. They evaluated the credibility of the witnesses and all circumstantial evidence and determined that Loper did knowingly possess drugs and criminal tools. In light of the foregoing analysis, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice such that the conviction is against the manifest weight of the evidence.
 {¶ 51} Loper's assigned error is without merit.
 CASE NUMBER 81400 {¶ 52} Case number 81400 is Nash's direct appeal from his conviction of possession of drugs (major drug offense) in violation of R.C. 2925.11. Nash has raised seven assignments of error in this appeal.
 {¶ 53} "I. Defendant was denied due process of law and the right of confrontation when the court permitted a prosecution witness to read a previous statement."
 {¶ 54} Nash argues that the prosecutor improperly questioned Witherspoon on redirect examination about the statement Witherspoon made to the police. Specifically, Nash claims that 1) the questioning was beyond the scope of redirect because defense counsel had not gone into the statement, 2) it was improper to allow Witherspoon to testify as to the truth of the statement and thereby judge his own credibility, and 3) the statement was improperly admitted as a prior consistent statement.
 {¶ 55} In a criminal case in which a defendant-appellant alleges that it was prejudicial error to allow the jury to hear certain testimony, the reviewing court must first determine if it was error to allow the jury to hear the testimony and, if so, whether such error was prejudicial or harmless. State v. Davis (1975), 44 Ohio App.2d 335, paragraph three of the syllabus.
 {¶ 56} A review of the transcript shows that Nash's trial court counsel asked Witherspoon on cross-examination about his statement to the police and whether he tried to be truthful. Witherspoon indicated the statement was not complete, and he agreed that he lied to the police. Nash's counsel also asked whether Witherspoon's statement made any mention of Nash doing anything except coming over. Witherspoon agreed that it did not. On redirect, the prosecutor asked Witherspoon to read a redacted version of his statement, and Loper's counsel objected. The trial court overruled the objection, and Witherspoon read the statement to the jury. No mention of Nash was made. Witherspoon testified that the statement was pretty close to what he had already testified to at trial.
 {¶ 57} Nash first argues the prosecutor's questioning of Witherspoon about his statement was beyond the scope of any redirect examination. As a general rule, the scope of redirect examination is limited to matters inquired into by the adverse party on cross-examination. State v. Wilson (1972), 30 Ohio St.2d 199, 204. "The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof." Id. An abuse of discretion is more than an error of law; it implies that the court acted unreasonably, arbitrarily, or unconscionably. See Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 58} In this case, the transcript reflects that defense counsel questioned Witherspoon about the content of his statement on cross-examination. Since the matter was inquired into by the adverse party, this court finds that the trial court did not abuse its discretion by allowing redirect examination on the content of the statement.
 {¶ 59} Nash also complains that the prosecutor improperly questioned Witherspoon about the truthfulness of his statement. The record reflects that defense counsel first questioned Witherspoon on cross-examination regarding the veracity of his statement. While the credibility of witnesses is primarily for the trier of fact, defense counsel opened the door to this line of questioning. See State v.Jackson (April 20, 2000), Cuyahoga App. No. 76141. Accordingly, this court finds no abuse of discretion by the trial court in allowing redirect examination on the truthfulness of the statement.
 {¶ 60} Finally, Nash argues the trial court erred in admitting the statement as evidence of a prior consistent statement. Evid.R. 801(D)(1)(b) provides that a prior consistent statement is not hearsay if it "is offered to rebut an express or implied charge against [the declarant] of recent fabrication or improper influence or motive." Further, when a portion of a prior written statement is used to impeach a witness by showing an inconsistency with the current testimony, the entire document may be admitted on rebuttal, to rehabilitate the witness. Shellock v. Klempay Bros. (1958), 167 Ohio St. 279, 282; Statev. Johnson (Nov. 12, 1998), Cuyahoga App. No. 57790; State v. Rivera
(Nov. 9, 1989), Cuyahoga App. No. 56158. Witherspoon testified on direct examination that he was given drugs by Loper. On cross-examination, defense counsel sought to impeach his credibility with questions pertaining to his prior statement to the police. On redirect, over objection, the state introduced a redacted version of the statement in which he stated Loper gave him dope. This was clearly proper, since on cross-examination an implication of fabrication and improper motive was made, which is the basis for admitting such statements under Evid.R. 801(D)(1)(b). Moreover, we note that even if permitting the testimony had been error, it was harmless since the testimony was relative to Loper's actions and did not reference Nash.
 {¶ 61} Nash's first assignment of error is overruled.
 {¶ 62} "II. Defendant was denied his constitutional right of confrontation and cross-examination."
 {¶ 63} Nash argues he was deprived of a fair trial because the trial court disallowed certain questions relating to the interest or bias Witherspoon and Anglen had in providing testimony. A trial court has broad discretion in determining the scope of cross-examination. State v.Blalock, Cuyahoga App. Nos. 80419, 80420, 2002-Ohio-4580. Absent a clear and prejudicial abuse of discretion, a reviewing court will not reverse a ruling on the scope of cross-examination. Terrell v. Terrell, Cuyahoga App. No. 80603, 2003-Ohio-150
 {¶ 64} Nash claims the trial court erred by not allowing Loper's counsel to ask whether Witherspoon lied to the court by pleading not guilty, and whether Witherspoon expected to get a break if Loper was convicted. A review of the transcript indicates Loper testified he was facing a maximum sentence of 11 or 12 years. The trial court sustained an objection to the question of whether Witherspoon "expected" to get a break in his sentence if Loper was convicted. The question was rephrased, and Witherspoon testified he was "hoping" to receive a break in his sentence. This testimony clearly informed the jury that Witherspoon was hoping to receive a reduced sentence as a result of his testimony. Thus, Nash was not prejudiced by the court's ruling.
 {¶ 65} Nash also claims the court would not allow his trial counsel to ask Anglen about the potential penalties he faced before he entered his plea agreement. Nash misconstrues the transcript in raising this error. Anglen testified that he was facing a maximum sentence of 30 years. Defense counsel then misstated the possible minimum sentence as being 12 years and the prosecutor objected. The court sustained the objection. Defense counsel then apologized and stated the correct minimum as 10 years. Anglen agreed with the potential sentence and further testified that he entered a plea agreement to testify in exchange for a two-and-one-half-year sentence. No abuse of discretion occurred in the trial court's ruling.
 {¶ 66} Nash's second assignment of error is overruled.
 {¶ 67} "III. Defendant was denied his right to present a defense when the court would not admit a statement of the witness that was used during the examination of the witness."
 {¶ 68} Nash argues the trial court denied his right to present a defense by not allowing exhibit 15 into evidence. Exhibit 15 was a written statement given to the police by Anglen. The prosecutor showed Anglen the statement to refresh his recollection of Witherspoon's location when he arrived at the apartment. Defense counsel cross-examined Anglen about the statement for impeachment purposes. Anglen testified that he did not make any mention of Nash in the statement. However, Anglen testified at trial that Nash picked up a bag of cocaine and brought it to the apartment.
 {¶ 69} In general, the admission of evidence is within the discretion of the trial court and the court's decision will be reversed only upon a showing of an abuse of discretion. State ex rel. Elsass v.Shelby Cty. Bd. of Commrs. (2001), 92 Ohio St.3d 529, 533. The exhibit defense counsel argues should have been admitted was a prior inconsistent statement made by Anglen. A court may only admit extrinsic evidence of prior inconsistent statements to assist the jury in assessing the witness's credibility at trial. State v. Kimbrough (July 9, 1999), Lake App. No. 97-L-274. The inconsistent statement may not be admitted as substantive evidence to prove the truth of the matter asserted. Id.
 {¶ 70} In this action, even if the trial court erred in not allowing the admission of the exhibit into evidence, the error was harmless since the matter that the exhibit sought to demonstrate was presented through admissible testimony. Defense counsel was permitted to thoroughly cross-examine the witness regarding the statement and point out any inconsistencies in the prior statement with his testimony at trial. Therefore, the jury was aware of the inconsistencies and the jury's ability to assess the witness's credibility was not compromised.
 {¶ 71} Nash's third assignment of error is overruled.
 {¶ 72} "IV. Defendant was denied due process of law when perjured testimony was offered against defendant."
 {¶ 73} It is Nash's contention that perjured testimony was offered against him through the testimony of Anglen. Nash refers to the prosecutor's comments in support of his argument. A review of the transcript reflects the following events transpired.
 {¶ 74} The prosecutor was asking Anglen about his observations when he first arrived at the apartment. Anglen testified that when he and Nash arrived at the apartment, they got out of the truck, Nash put the dope in his pocket, they walked towards the apartment, he saw Witherspoon in the door, and he followed Nash up. The prosecutor asked to approach the bench where it was decided to discuss the matter in chambers and outside the presence of the jury. While in the court's chambers, the prosecutor stated as follows:
 {¶ 75} "I don't want to put on a witness that I think may be perjuring himself. I don't know whether he's doing this intentionally or whether he's just getting it confused.
 {¶ 76} "In his written statement which the defense counsel each have a — of which defense counsel each have a copy, he specifically says myself and Mr. Nash went upstairs in the apartment where we ran into Mr. Loper and Mr. Witherspoon. Then Nash pulled a bag out of his pocket."
 {¶ 77} There was then a discussion off the record. When Nash's testimony resumed, the prosecutor showed Nash his prior written statement to refresh his recollection. Nash again testified that when he first arrived at the apartment, Witherspoon was at the door. The prosecutor asked whether that portion of his statement was correct, and Nash reiterated that Witherspoon was at the door and they all went upstairs. Nash then proceeded to testify as to the events that occurred while in the apartment.
 {¶ 78} We are not persuaded that the record supports the conclusion that perjured testimony was offered. While Anglen varied his testimony from his written statement as to Witherspoon's location when he arrived, there was no indication that Anglen was offering false testimony or that his written statement was false. Moreover, Nash presents no evidence that the testimony in question was made by Anglen knowing it to be false. He could have been merely confused on that point. Therefore, only a credibility issue was presented. Defense counsel had a copy of Anglen's statement and the opportunity to cross-examine him. Further, even if a false statement had been made, the false statement must also be material to the case before perjury has been committed. Pedraza v. OsterInvest., Inc. (March 21, 1989), Henry App. No. 7-87-10. Whether Witherspoon was at the door when Anglen arrived was not a material factor in the case. Under these facts, we find that perjury could not have occurred.
 {¶ 79} Nash's fourth assignment of error is overruled.
 {¶ 80} "V. Defendant was denied due process of law when the court instructed on constructive possession."
 {¶ 81} Nash argues the trial court erred in providing a jury instruction on "constructive possession" and should have only provided the jury with the statutory definition of the term "possess" or "possession" in R.C. 2925.01(K). The relevant language contained in the jury instruction provided as follows:
 {¶ 82} "A person may possess or control property belonging to another. One need not have actual possession of a controlled substance to be guilty of the substantive charge of possession. Constructive possession is sufficient. Constructive possession exists when the defendant exercises or has the power to exercise dominion and control over the item even though the item may not be within his immediate physical control.
 {¶ 83} "Possess or possession means having control over a thing or substance but it may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 84} A review of the jury instruction shows that it included the definition of "possess" or "possession" provided in R.C. 2925.01(K). Insofar as Nash objects to the court's inclusion of language defining "constructive possession," this instruction was consistent with the facts of the case.
 {¶ 85} The Ohio Supreme Court has recognized that, as instructed by the trial court, possession may be actual or constructive. State v.Wolery, 46 Ohio St.2d at 329. Further, contrary to Nash's argument, the trial court's instruction did not require amendment of the indictment, and follows well established authority applying the concept of constructive possession when the defendant denies possession of the drugs found in plain view and close proximity to him at the time of his arrest. See State v. Franklin (May 10, 2001), Cuyahoga App. No. 77385.
 {¶ 86} Nash's fifth assignment of error is overruled.
 {¶ 87} "VI. Defendant was denied due process of law when the court overruled his motion for judgment of acquittal."
 {¶ 88} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. Id. In essence, sufficiency is a test of adequacy.Thompkins, 78 Ohio St.3d at 386-387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. DeHass, 10 Ohio St.2d at 231.
 {¶ 89} In this case, Anglen testified that he went with Nash to the apartment. On their way, Nash stopped at a house off Kinsman and picked up a bag of crack cocaine. When they arrived at the apartment, Nash pulled the bag of cocaine out of his pocket and placed it on the kitchen counter. Anglen stated that the crack cocaine that Nash placed on the counter was flat on the counter, out of the bag. A pack of Newport cigarettes was next to the crack on the counter, and Anglen testified that Nash had given him a Newport. Additionally, Witherspoon testified that Nash offered him a piece of the crack cocaine to try. When the police arrived, Nash was located in the kitchen within proximity of the crack cocaine on the counter which was determined to weigh 120.93 grams.
 {¶ 90} Reviewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Nash knowingly possessed crack cocaine in an amount exceeding 100 grams.
 {¶ 91} Nash's sixth assignment of error is overruled.
 {¶ 92} "VII. Defendant was denied due process of law as his convictions are against the manifest weight of the evidence."
 {¶ 93} Nash argues that his conviction was against the manifest weight of the evidence because there was no evidence linking Nash to the premises, no drugs were found on Nash, and the testimony of Anglen was inconsistent.
 {¶ 94} The standard of review for a manifest weight challenge was set forth under appellant Loper's assigned error. In reviewing the record as to Nash, we find the circumstantial evidence was sufficient to support Nash's conviction.
 {¶ 95} Anglen testified Nash brought crack cocaine into the apartment and placed it on the kitchen counter. While defense counsel sought to impeach Anglen's testimony by questioning Anglen about his interest in the outcome of the action, the jury heard the testimony and had the opportunity to assess Anglen's credibility. Further, Nash's assertion that Anglen's testimony was uncorroborated is not supported by the record. Witherspoon testified that after Nash arrived at the apartment, Nash gave him a piece of crack cocaine to try. When the police arrived, Nash was located in the kitchen, within close proximity to the crack cocaine.
 {¶ 96} In considering these facts and circumstances and the credibility of the witnesses, the jury could have reasonably found that Nash knowingly exercised dominion and control over the crack cocaine confiscated from the kitchen counter, even though it was not within his actual possession. Moreover, it was reasonable for the jury to conclude Nash had constructive possession of the crack cocaine which weighed more than 100 grams. Based on our review of the record, weight of the evidence, and credibility of the witnesses, it cannot be said that in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice such that the conviction is against the manifest weight of the evidence.
 {¶ 97} Nash's seventh assignment of error is overruled.
 CASE NUMBER 81878 {¶ 98} Case number 81878 is Nash's appeal from the trial court's denial of his motion for a new trial or, in the alternative, petition for postconviction relief. In this appeal, Nash raises one assignment of error stated as follows:
 {¶ 99} "I. Defendant was denied due process of law when the court ruled on defendant's motion without an evidentiary hearing."
 {¶ 100} The following additional facts are relevant to this assignment of error.
 {¶ 101} On February 21, 2002, the jury returned its verdict finding Nash guilty of possession of crack cocaine in an amount exceeding one hundred grams and not guilty of possession of PCP and possession of criminal tools. The trial court sentenced Nash on May 1, 2002.
 {¶ 102} Nash filed a notice of appeal on June 6, 2002. He filed his motion for a new trial or, in the alternative, petition for post-conviction relief, on August 23, 2002. In support of his motion, Nash filed an affidavit of Denise Walker, his cousin. Walker stated in her affidavit that Anglen told her, after his arrest, that he did not know anything about the drugs or what was going on at the apartment. Walker claimed that Anglen told her that he was going to tell the police that Nash did not know anything and was not involved with anything. Walker also stated that Anglen admitted to her that he testified falsely because the prosecutor wanted him to implicate Nash and that he complied in order to get out of jail. In addition to Walker's affidavit, Nash also filed an affidavit from Witherspoon. Witherspoon stated in his affidavit that his trial testimony about Nash giving him crack cocaine was not true and that he testified falsely in an effort to receive a lighter sentence.
 {¶ 103} The trial court denied Nash's motion, without hearing, on September 10, 2002. On December 23, 2002, the trial court granted a motion to supplement the record with a letter written by Witherspoon on May 25, 2002. In the letter, which was an unsworn statement addressed to the judge, Witherspoon stated that Nash told him to write an affidavit saying that Nash did not give him cocaine or any type of drug and that Nash threatened that somebody was going to kill Witherspoon for lying.
 {¶ 104} Initially, we find that the trial court did not have jurisdiction to consider Nash's motion for new trial. A motion for a new trial is inconsistent with a notice of appeal of the judgment sought to be retried. State v. Smith (Nov. 6, 1997), Cuyahoga App. Nos. 69799, 70451 and 71643, citing Majnaric v. Majnaric (1975), 46 Ohio App.2d 157, paragraph one of the syllabus. The notice of appeal divests the trial court of jurisdiction to consider a motion for a new trial. Id. Therefore, we find the trial court did not err in denying Nash's motion for new trial.
 {¶ 105} Next, we find that it does not appear from the record that the trial court ruled on the alternative petition for postconviction relief. The trial court's entry, dated September 10, 2002, simply provides "defendant's motion for a new trial is denied." No ruling was issued on the petition for postconviction relief. Even if we were to construe the denial of the motion for new trial as a denial of the petition also, the trial court did not issue any findings of fact or conclusions of law. Therefore, we lack a final appealable order.
 {¶ 106} When a trial court dismisses a postconviction petition, regardless of whether or not it holds a hearing, it must issue and file findings of fact and conclusions of law. R.C. 2953.21(C) and (G). As stated by this court in State v. Spencer, Cuyahoga App. No. 81035, 2003-Ohio-287, "[i]f the court fails to fulfill that obligation, the judgment entry is `incomplete and, thus, does not commence the running of the period for filing an appeal therefrom.' [citations omitted]." See also State v. Girts (Dec. 10, 1998), Cuyahoga App. No. 73749 (holding same).
 {¶ 107} Since there was no final order or judgment on Nash's petition for postconviction relief, Case No. 81878 must be dismissed with respect to the petition.
 {¶ 108} Nash's assignment of error is overruled.
 {¶ 109} The judgment of the trial court is affirmed as to Case Nos. 81297 and 81400 and is affirmed in part and dismissed in part as to Case No. 81878.
JAMES J. SWEENEY, P.J., AND TIMOTHY E. MCMONAGLE, J., CONCUR.