OPINION *Page 2 
{¶ 1} Defendant-appellant Harvey Tapp appeals from his convictions and sentences in the Delaware County Court of Common Pleas on one count of Conspiracy to Trafficking in Cocaine in violation of Ohio Revised Code § 2923.01(A) (2), a felony of the third degree and one count of Trafficking in Cocaine in violation of O.R.C. § 2925.03(A) (1), a felony of the second degree. The trafficking offense contained a specification that the offense occurred in the vicinity of a school in violation of R.C. 2925.03(A) (1 ). The plaintiff appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On September 22, 2003 Mr. Shannon Hudson was working as a confidential informant for the Delaware County, Ohio Drug Task Force. On that date Hudson, in conjunction with Ms. Destiny Couch, a deputy with the Delaware County, Ohio Sheriff's Department, called Ms. Amy Weiser on the telephone about the purchase of approximately one half (.5) ounce, or fourteen (14) grams, of cocaine.
 {¶ 3} Sergeant Mark Leatherman testified that he was personally acquainted with appellant prior to the events of the case. (1T. at 61-62). He testified that he observed appellant and Ms. Weiser arrive at the confidential informant's residence on September 22, 2003. (Id. at 72). Sergeant Leatherman observed Ms. Weiser enter the *Page 3 
residence, stay for three minutes, exit and drive away in the van with appellant. (1T. at 73). Sergeant Leatherman further testified that Hudson, the confidential informant, confirmed via phone that appellant was the passenger in Ms. Weiser's van. (Id. at 74-75).
 {¶ 4} Detective Sergeant Randy Pohl testified that he picked up surveillance of the van when it left the residence. (1T. at 120-121). He testified that appellant pumped gas at the Certified gas station located on the corner of William Street and Lake Street in Delaware, Ohio. (Id. at 121). Detective Pohl testified that the van then proceeded to Morse Road in Columbus, Ohio, where it stopped at the Colonial Quick Mart gas station. (Id. at 122). The pair remained at that location for six minutes. During that time appellant used the payphone. (Id. at 122). The van then drove west on Morse Road, stopping at the Ameri-Stop Food Mart in Columbus. (Id. at 123). Appellant exited the vehicle and appeared to use a payphone. (Id.). A short time later a white Dodge Durango arrived. Anthony Ward was identified by law enforcement officers as the front seat passenger. (Id.). Appellant entered the rear driver side and exited the vehicle within a minute or two. (Id. at 124). The Durango and the van then exited the Ameri-Stop headed in opposite directions. (Id. at 125).
 {¶ 5} Shannon Hudson, the confidential informant, testified that he knew appellant personally before the events of September 22, 2003. (1T. at 138-139). He also indicated that appellant knew Anthony Ward. (1T. at 139). Hudson further testified that appellant was in Ms. Weiser's van when it arrived at his residence on September 22, 2003. (1T. at 136). Ms. Weiser also told Hudson that appellant was in her van. (Id. at 137). *Page 4 
 {¶ 6} Detective Sergeant Eric Griffin testified that he was present and involved with the surveillance on September 22, 2003. (1T. at 155-159). He testified that Anthony Ward was the passenger in the Durango that drove by his location leaving the Ameri-Stop in Columbus, Ohio. (Id. at 158-159).
 {¶ 7} Ms. Amy Weiser, the co-conspirator, testified that she and appellant were in a romantic relationship and cohabitating on September 22, 2003. (2T. at 204-206). Ms. Weiser was married and changed her name to Amy Cole after the events set forth in the Indictment occurred and prior to the trial in this case. Ms. Weiser had been charged with trafficking in cocaine in conjunction with the events of September 22, 2003. (2T. at 224). She pled guilty to amended charges in that case, being a felony of third degree and a felony of the fourth degree. (Id. at 236). She was placed on community control sanctions as the result of that guilty plea, and was on intensive probation at the time of trial. (Id.). As part of a plea agreement Weiser agreed to testify against appellant. (Id. at 236).
 {¶ 8} Weiser indicated that appellant knew both Hudson and Anthony Ward. (Id. at 207-208). Weiser indicated that she only knew Anthony Ward through appellant, and did not personally know or interact with Ward. (Id. at 208). Weiser testified that she was unable to obtain the cocaine through her usual source, but that appellant called Anthony Ward because "it was better stuff". (Id. at 210). She indicated that appellant set the deal up to take place in Columbus, Ohio with Mr. Ward. (Id. at 210-211). Weiser testified that she and appellant went to Hudson's residence in her minivan. (Id. at 211). She testified that she went into the residence and picked up the buy money, then left a few minutes later. (Id. at 212). Weiser testified that pair got gas in Delaware at the Certified station; *Page 5 
Appellant pumped the gas while she paid. (Id. at 213). They then proceeded to Morse Road in Columbus, Ohio where they stopped at a gas station and appellant called Anthony Ward from a pay phone to arrange a meeting location. (Id. at 214). The pair then proceeded to the Ameri-Stop station off Morse Road in Columbus. (Id. at 215). Appellant then "acted" like he was using the payphone while awaiting the arrival of Mr. Ward. (Id. at 215). A white Dodge Durango arrived with Anthony Ward in the front passenger seat. (T. at 216). Appellant entered the vehicle in which Ward was seated. Appellant had taken the buy money from Weiser on the way to Columbus, and possessed it when he entered the white vehicle. (Id. at 216). A couple of minutes later appellant exited the white vehicle and returned to the minivan. Upon his return to the minivan appellant was in possession of one-half ounce of cocaine. (Id. at 217). The cocaine appeared to Weiser to be white and chunky. Weiser and appellant consumed a portion of the cocaine while they were driving to GNC, a nutrition store located in Columbus, Ohio. (2T. at 217-218). There they purchased creatine to "cut" the cocaine. (2T. at 218). The pair went to a friend's residence in Columbus where appellant "cut" the cocaine with the creatine. (Id. at 219). Appellant kept half of the cocaine for him and Weiser and "cut", or replaced it, with creatine to give to Hudson. (Id. at 221). The pair proceeded to return to Delaware, where Weiser dropped appellant off at his uncle's house. Weiser then delivered the diluted cocaine to Hudson. (Transcript at 222 and 248).
 {¶ 9} Deputy Destiny Couch testified that she was in Hudson's residence working in an undercover capacity on the date in question. (1T. at 146-148). She testified that Weiser explained upon returning with the cocaine that one of the reasons *Page 6 
she was so late was that she had dropped appellant off on her way back. (Transcript at 149-151).
 {¶ 10} Sergeant Mark Leatherman testified that the appearance of the cocaine indicated that it had quite possibly been "cut". (1T. at 84). He also testified that the cocaine field tested "weak", another indication it had been "cut". (Id. at 86-87).
 {¶ 11} The jury returned guilty verdicts on both counts of the Indictment. The Trial Court sentenced appellant on August 16, 2006 to a period of incarceration of five (5) years as to Count Two, with four (4) years mandatory incarceration, and four (4) years as to Count One. The two (2) sentences were to run concurrent. Further, the Trial Court ordered that his driver's license be suspended for six (6) months upon his release from the Ohio Department of Rehabilitation and Correction.
 {¶ 12} Appellant timely appealed and submits the following four assignments of error for our consideration:
 {¶ 13} "I. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A VERDICT OF GUILTY ON COUNT ONE OF THE INDICTMENT, AS THERE WAS NO EVIDENCE INDEPENDENT OF THE TESTIMONY OF THE CO-CONSPIRATOR THAT PROVIDED A CONNECTION BETWEEN MR. TAPP AND THE CRIME CHARGED.
 {¶ 14} "II. THE EVIDENCE AS TO COUNT TWO WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILTY, BECAUSE MERE PRESENCE AT THE SCENE IS INSUFFICIENT TO CONVICT AN INDIVIDUAL OF AIDING AND ABETTING.
 {¶ 15} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO INSTRUCT THE JURY THAT THE MERE PRESENCE OF AN ACCUSED AT THE *Page 7 
SCENE OF THE COMMISSION OF A CRIME IS NOT SUFFICIENT IN AND OF ITSELF, THAT THE ACCUSED WAS AN AIDER AND ABETTOR.
 {¶ 16} "IV. THE VERDICTS ON COUNTS ONE AND TWO ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE".
 I., II. IV. {¶ 17} Because appellant's first, second and fourth assignments of error concern the sufficiency and weight of the evidence we shall address these assignments of error together.
 {¶ 18} In his first assignment of error appellant asserts that the trial court should have dismissed this matter for lack of sufficient evidence because Weiser's testimony is not credible, there is no independent evidence to corroborate the alleged conspiracy pursuant to R.C. 2923.01(H). In his second assignment of error appellant maintains that there is insufficient evidence to establish his conviction for complicity. In his fourth assignment of error appellant asserts that his convictions for conspiracy and complicity are against the manifest weight of the evidence. We disagree.
 {¶ 19} In the case at bar, the state charged appellant with conspiracy to trafficking in drugs and trafficking in drugs. R.C. 2923.01 sets forth the essential elements for a conspiracy offense. The conspiracy statute provides, in relevant part:
 {¶ 20} "No person, with purpose to commit or to promote or facilitate the commission of * * * aggravated trafficking, trafficking in drugs * * * shall do either of the following: With another person or persons, plan or aid in planning the commission of any such offense; *Page 8 
 {¶ 21} "Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any such offense".
 {¶ 22} The complicity statute R.C. 2923.03 provides:
 {¶ 23} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 24} "* * *
 {¶ 25} "(2) Aid or abet another in committing the offense."
 {¶ 26} Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. See State v. Johnson
(2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. "`Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" State v. Mendoza (2000),137 Ohio App.3d 336, 342, 738 N.E.2d 822, quoting State v. Stepp (1997),117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342.
 {¶ 27} R.C. 2925.03(A) sets forth the essential elements of trafficking in drugs: "No person shall knowingly sell or offer to sell a controlled substance."
 {¶ 28} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412). *Page 9 
 {¶ 29} Appellant first asserts that the trial court should have dismissed this matter for lack of sufficient evidence because Weiser's testimony is not credible, there is no independent evidence to corroborate the alleged conspiracy pursuant to R.C. 2923.01(H).
 {¶ 30} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:
 {¶ 31} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 32} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus:
 {¶ 33} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 34} When a defendant challenges the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; State v. Jenks (1991), *Page 10 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. A verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact.Jenks, 61 Ohio St.3d at 273, 574 N.E.2d at 503; State v. Getsy (1998), 84 Ohio St.3d 180,183, 1998-Ohio-533, 702 N.E.2d 866,882.
 {¶ 35} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. This inquiry requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction. This inquiry is separate from the examination for sufficiency. The question is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, at syllabus; State v. Getsy, supra84 Ohio St.3d at 193-194, 1998-Ohio-533, 702 N.E.2d at 881.
 {¶ 36} The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 37} With regard to the substantive aspects of appellant's contentions we note that R.C. 2923.01(H) (1 ) states as follows:
 {¶ 38} "(H) (1) No person shall be convicted of conspiracy upon the testimony of a person with whom he conspired, unsupported by other evidence." *Page 11 
 {¶ 39} In State v. Pearson, the Ohio Supreme Court reviewed former R.C. 2923.03(D) which read: "[n]o person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence." 62 Ohio St.2d 291, 292,405 N.E.2d 296, 297. With respect to the corroboration requirement the Court held "[i]n order for the prosecution to satisfy the corroboration requirement of R.C. 2923.03(D), independent evidence must support an accomplice's testimony, and must tend to connect the accused with the alleged crime or must tend to identify the accused as a guilty actor. (State v. Myers, 53 Ohio St.2d 74, 372 N.E.2d 356, approved and followed.)." Id. at paragraph 2 of the syllabus. The Ohio Supreme Court has further noted ". . ., the corroborating evidence need not by itself prove guilt beyond a reasonable doubt. . .Moreover, one accomplice may corroborate the testimony of another. . . ." State v. Tyler (1990),50 Ohio St.3d 24, 33, 553 N.E.2d 576, 589, superseded by constitutional amendment in part on other grounds State v. Smith (1997),80 Ohio St.3d 89, 103 at n. 4, 684 N.E.2d 668, 684. (Citations omitted).
 {¶ 40} In State v. Robinson (1910), 83 Ohio St. 136, 143, 93 N.E. 623, the question of corroboration in an incest case was discussed by the Supreme Court and it was therein stated that:
 {¶ 41} "* * * It is not necessary that the crime charged be proven independently of the testimony of the accomplice, or that the testimony of the accomplice be corroborated in every particular in order that it may be said to be corroborated, but only that there be circumstantial evidence, or testimony of some witness other than the accomplice, tending to connect the defendant with the crime charged and to prove some of the material facts testified to by the accomplice. * * *" *Page 12 
 {¶ 42} In the case at bar, appellant did not dispute many of the material facts that Weiser testified to at trial. The testimony of Detective Pohl provided the required corroboration. He testified that he observed appellant seated inside Weiser's van as she went inside to pick-up the "buy money" from Deputy Couch and the informant. (1T. at 120). Detective Pohl followed the pair as they left the residence and traveled to a gas station in Delaware where appellant filled the vehicle's gas tank. (Id. at 121). He followed the pair from that location to the Colonial Quick Mart in Columbus, Ohio. (Id. at 122). Appellant exited the van and used the pay telephone. (Id. at 122). The pair proceeded to the Ameri-Stop Food Stop located at the corner of Walford and Morse Roads in Columbus, Ohio. (Id. at 123). Appellant again exits the van and proceeds to the pay phone. (Id. at 123). Detective Pohl testified that a short time later, a white Dodge Durango arrived at the location. (Id.). That vehicle did not enter a parking space; it parked in the middle of the parking lot. (Id. at 124). Appellant got into the back seat behind the driver of the White Durango for no more than two minutes then returned to the van. (Id. at 124). Detective Pohl testified that the passenger in the White Durango was Anthony Ward. (Id. at 123). Testimony further corroborated Weiser's testimony that the cocaine appellant purchased from Ward had been diluted or "cut." (1T. at 86-87).
 {¶ 43} Appellant concedes that the testimony of Detective Pohl corroborates parts of Weiser's testimony. (Appellant's Brief at 7). The above testimony establishes that appellant was not convicted solely on the basis of Weiser's testimony. We conclude that sufficient evidence existed to support the testimony of the accomplice as required by R.C.2923.01(H). *Page 13 
 {¶ 44} R.C. 2923.03 which addresses the offense of complicity, as opposed to conspiracy, eliminated the need for corroboration of an accomplice's testimony, but required the court to instruct the jury about its suspect credibility. State v. Evans (1992), 63 Ohio St.3d 231,240-241, 586 N.E.2d 1042, 1051-1052. Accordingly, in the case at bar, the State was not required to provide evidence to corroborate Weiser's testimony in order to obtain a conviction on Count two of the indictment, i.e. aiding and abetting Weiser in trafficking in cocaine.
 {¶ 45} Appellant additionally argues that the evidence was insufficient to prove that he had knowledge of, or participated, in the drug transaction and that he was, in essence, an innocent bystander who was merely along for the ride. The jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003- Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. *Page 14 
 {¶ 46} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction."' State v. Jenks (1991), 61 Ohio St.3d 259, 272,574 N.E.2d 492 at paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value [.]"' Jenks, 61 Ohio St .3d at paragraph one of the syllabus. Furthermore, "`[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt."' Jenks, 61 Ohio St.3d at 272,574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990),51 Ohio St.3d 160, 168, 555 N.E.2d 293, citing Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott, 51 Ohio St.3d at 168,555 N.E.2d 293, citing Hurt, 164 Ohio St. at 331, 130 N.E.2d 820.
 {¶ 47} The assessment of the accomplice's credibility was for the jury to decide. In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1. *Page 15 
 {¶ 48} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.CE. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 49} Upon a careful review of the record and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty.
 {¶ 50} Accordingly, appellant's convictions for conspiracy to trafficking in cocaine and complicity to trafficking in cocaine were not against the sufficiency or manifest weight of the evidence.
 {¶ 51} Appellant's first, second and fourth assignments of error are overruled.
 III. {¶ 52} Appellant contends that the trial court erred by not instructing the jury that mere presence of the accused at the scene of a crime is not sufficient proof in and of itself that the accused was an aider in the commission of the crime. (2T. at 256-257). We disagree.
 {¶ 53} We note that appellant did not provide this court with a transcript of the final charge to the jury. Instead, he presented the written jury instructions prepared by the trial court as an appendix to his brief. Without the transcript this Court has no way *Page 16 
of knowing whether the written copy is a verbatim recitation of the instructions the jury actually received at the conclusion of appellant's trial. Absent the transcript, we are unable to review the jury instructions in context. In Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199, the Supreme Court of Ohio held the following: "[t]he duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See State v.Skaggs (1978), 53 Ohio St.2d 162. This principle is recognized in App.R. 9(B), which provides, in part, that `* * *the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record. * * *' When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." (Footnote omitted.) However, we will review this assignment of error based upon the record that has been presented.
 {¶ 54} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St. 3d 206, paragraph two of the syllabus. If a requested instruction contain a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. State v.Nelson (1973), 36 Ohio St. 2d 79, paragraph one of the syllabus. However, the corollary of this maxim is also true. It is well established that the trial court will not instruct the jury where there is no evidence to *Page 17 
support an issue. Riley v. Cincinnati (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135; Murphy v. Carrollton Manufacturing Co.
(1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle v.Huettner (1971), 28 Ohio St.2d 54, 275 N.E.2d 340, at syllabus;Murphy v. Carrollton Manufacturing Co., supra; State v. Coleman, 6th Dist. No. S-02-41, 2005-Ohio-318 at ¶ 12.
 {¶ 55} "[To] support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal Search Term End ."Search Term Begin State v. Johnson (2001), 93 Ohio St.3d 240,754 N.E.2d 796, Search Term End syllabus. Such criminal intent can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed. Search Term Begin Id. at 245, 754 N.E.2d 796Search Term End .
 {¶ 56} As noted in our discussion of appellant's first, second and fourth assignments of error, supra, the evidence was sufficient to establish that appellant was not an innocent bystander who was merely along for the ride. Appellant was present when Weiser received the telephone call from the confidential informant inquiring about the purchase of cocaine. Appellant accompanied Weiser to the location to pick-up the "buy" money. Appellant made at least one telephone call in Columbus, Ohio. A short time after this call the White Durango appeared. Appellant entered the vehicle and less *Page 18 
than two minutes later returned to the van where Weiser was waiting. The cocaine appeared to be "cut" or diluted with a foreign substance which corroborates Weiser's testimony that the pair purchased ceataine from a nutrition store in the Columbus area with which to dilute the powdered cocaine.
 {¶ 57} Additionally, we note the court's general instructions to the jury clearly indicated that, for appellant to be convicted, the jury would have to find that he had knowingly participated in the offenses. The trial court is not required to give a proposed instruction that is subsumed within the court's general charge. Therefore, even were we to assume that the evidence presented at trial was consistent with the requested charge, we would find no error in the court's refusal to instruct the jury on "mere presence." State v. Johnson (2000),140 Ohio App.3d 385, 394, 747 N.E.2d 863, 870. See also Search Term Begin Statev. Carver (1972), 30 Ohio St.2d 280, 290, 285 N.E.2d 26. Search Term End [Trial court properly instructs the jury on Ohio law pertaining to aiding and abetting, it is under no obligation to also give an instruction on accessories after-the-fact].
 {¶ 58} Appellant's third assignment of error is overruled. *Page 19 
 {¶ 59} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.
By Gwin, P.J., Hoffman, J., and Edwards, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs to appellant. *Page 1