[Cite as *Gevelaar v. Millennium Inorganic Chems.*, 2013-Ohio-435.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| ANTOON GEVELAAR, SR., et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2012-A-0013** |
| MILLENNIUM INORGANIC CHEMICALS, et al., | : | |
| | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2010 CV 1020.

Judgment: Affirmed.

*L. Bryan Carr*, Carr, Feneli & Carbone Co., L.P.A., 1392 S.O.M. Center Road, Mayfield Heights, OH  44124 (For Plaintiffs-Appellants).

*Jon L. Lindberg* and *Stuart W. Cordell*, Warren and Young, P.L.L., 134 West 46th Street, P.O. Box 2300, Ashtabula, OH  44005-2300 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1}    This appeal is before us on the judgment of the Ashtabula County Court of Common Pleas, which overruled appellee-Millennium Inorganic Chemicals' motion for a directed verdict on the claim of appellant-Antoon Gevelaar, Sr.; granted appellee's motion for a directed verdict on the claim of appellant-Antoon Gevelaar, Jr.; and rendered judgment in favor of appellee on the jury's general verdict.  Appellants ask that

this court reverse the jury's verdict and remand the matter to the trial court due to several errors of law that occurred at trial. For the reasons stated below, we affirm.

{¶2} Appellee is a chemical manufacturer that has been located in Ashtabula, Ohio for approximately 50 years. It conducts its processes 24 hours a day, 7 days a week. Beginning in the early 1990's, Gevelaar, Sr. began purchasing undeveloped real estate on Tillotson Road ("Tillotson Properties"), which is located approximately one mile from appellee's place of business. Appellants intended to develop and market the Tillotson Properties as single family homes.

{¶3} In approximately 1998, Gevelaar, Jr. moved into a construction trailer on one of the parcels, but did not own any portion of the Tillotson properties and was not paying rent to his father. He simply resided there. Appellants both testified that from 1998 until 2006, there was no noise of any kind emanating from appellee's plant.

{¶4} In 2006, appellants sold their first home to Helen English. At the time of the sale, appellants claimed that there was no noise emanating from appellee's plant. Ms. English testified that prior to her purchase of the property, she visited the area numerous times and never heard any noise emanating from appellee's plant. However, shortly after the sale, appellants and Ms. English began to hear a constant humming noise and regular steam blasts coming from appellee's plant. The humming noise was characterized as similar to a hissing, whirring, or electric bulb. The steam blasts were likened unto jet airplanes.

{¶5} Ms. English and appellants made multiple complaints to appellee from the years 2006 to 2010. One other local resident also complained about the noise. At all times, appellee quickly responded to the complaints and made diligent efforts to identify

2

the source and eliminate the problem. Several representatives of appellee as well as Ryan Whitmire, the Ashtabula Zoning Inspector, visited appellants and Ms. English at the Tillotson Properties in an effort to hear the noise and discuss the problem. Certain of appellee's employees admitted in emails between one another that the humming noise was coming from appellee's plant. However, they were unable to pinpoint the cause or fix the problem. Gevelaar, Jr. testified that he did not think appellee was purposely trying to create a nuisance. Mr. Whitmire testified that appellee was not in violation of any city ordinances.

{¶6} Appellee's Safety, Health, and Environmental Technician, Gail Wright, testified that she conducted a noise study, and that the noise at appellants' property reached 60 decibels, which is the equivalent of normal conversation or that of a typewriter. She acknowledged hearing the hum herself upon visiting the Tillotson Properties, but did not record in her report that she attributed it to the nearby power lines or railroad track. Regarding the steam blasts, several representatives of appellee testified that the steam blasts were a necessary safety measure scheduled to occur at least every eight weeks as part of appellee's planned "shutdown" for depressurization, and that the steam blasts could not be eliminated. The steam blasts typically last three to four hours at a time. As a result of the noise, appellants abandoned their intentions to develop the property as a residential area.

{¶7} On September 21, 2010, appellants filed their complaint against appellee, alleging that it was conducting its manufacturing process in such a way as to constitute a nuisance. Appellants claimed various damages, including, but not limited to, lost profits, loss of marketability of property, discomfort, and annoyance. In addition to

3

damages, appellants sought an injunction requiring appellee to abate the nuisance, as well as interest and attorney's fees.

{¶8} Following discovery, the matter was considered on summary judgment, which the trial court denied. A trial commenced in February 2012. At the close of the case, the trial court granted appellee a partial directed verdict on the claims of Gevelaar, Jr., but denied appellee's motion for a directed verdict against Gevelaar, Sr. The jury rendered a verdict in favor of appellee. This timely appeal followed and appellants raise three assignment of error for our review:

{¶9} "[1.] The trial court erred in its instructions to the jury with regard to the law of nuisance.

{¶10} "[2.] The trial court erred in granting the appellee's motion for directed verdict as to the claims of Antoon Gevelaar, Jr.

{¶11} "[3.] The trial court erred in refusing to permit a recording made by one of the appellants' witness to be played for the jury."

{¶12} In their first assignment, appellants maintain that the trial court's refusal to instruct the jury as to absolute, or intentional, nuisance pursuant to Ohio Jury Instruction ("OJI") 621.01 and 621.05 constitutes error. Appellants' proposed instructions requested absolute nuisance instructions. Instead, the court instructed the jury as to qualified, or negligent, nuisance pursuant to OJI 621.07. For the reasons that follow we agree that the trial court's failure to instruct the jury as to absolute nuisance constituted error. However, the error was nonprejudicial.

{¶13} In determining the appropriateness of jury instructions, an appellate court reviews the instructions as a whole. *Chambers v. Admr., Bureau. of Workers' Comp.*,

4

164 Ohio App.3d 397, 2005-Ohio-6086, ¶15 (9th Dist.). We acknowledge that the giving of jury instructions is often examined under an abuse of discretion standard, which gives some deference to the trial court. However, it is important to note that the current working definition of abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler*, 2d Dist. No 09-CA-54, 2010 Ohio 1900, ¶62, quoting Black's Law Dictionary (8 Ed. Rev. 2004) 11." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, 2012-Ohio-2120, ¶31. "[W]hen an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error.'" *Id*.

{¶14} With respect to the giving of jury instructions, the Fifth Appellate District correctly followed this principle by stating as follows:

{¶15} "'[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.' * * * If a requested instruction contain[s] a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. * * * 'In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an ( * * * ) instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.' * * * " *State v. Tapp*, 5th Dist. No. 2006-CAA-090058, 2007-Ohio-2959, ¶54.

{¶16} So, in other words, when the facts and evidence in a case support the requested instruction, and the instruction is a correct statement of the law, the court may not refuse to give the instruction. However, a trial court's failure to give a proposed

5

jury instruction is reversible error only if the party demonstrates that it was prejudiced by the trial court's refusal to give the proposed instruction. *Nails v. Perrin Asphalt*, 9th Dist. No. C.A. 07CA0010-M, 2007-Ohio-6147, ¶13. In this case, appellants are unable to show prejudice by the trial court's failure to give an absolute nuisance instruction.

{¶17} In Ohio, "[t]he term 'nuisance' designates a distinct tort, consisting of anything wrongfully done or permitted that unreasonably interferes with another in the enjoyment of his property. * * * 'It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally.' * * * To maintain an action for nuisance, there must be a real, material, and substantial injury. * * * 'Damages for nuisance may include diminution in the value of the property, costs of repairs, loss of use of the property, and compensation for annoyance, discomfort, and inconvenience.'" *Natale v. Everflow Eastern, Inc.*, 195 Ohio App.3d 270, 2011-Ohio-4304, ¶20 (11th Dist.).

{¶18} "Nuisances are classified as absolute nuisances or qualified nuisances. * * * 'An absolute nuisance, or nuisance *per se*, consists of [1.] an intentional act resulting in harm; [2.] an act involving (* * *) unlawful conduct causing unintentional harm, or [3.] a non-culpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.'" * * * *Id.* at ¶21.

{¶19} "In contrast, '[a] qualified nuisance, or nuisance dependent on negligence, consists of an act lawfully but so negligently ( * * * ) done as to create [an] unreasonable risk of harm, which in due course results in injury to another.'" *Id.* at ¶22. Nonetheless, the common element between the classification of "absolute nuisance" and "qualified

6

nuisance" is the existence of a nuisance, i.e. "a real, material and substantial injury." *Id.* at ¶20.

**{¶20}** "'[T]he distinction between "absolute" and "qualified" nuisance depends upon the conduct of the defendant'. * * * [A]n 'absolute nuisance' requires intentional conduct on the part of the defendant[.] * * * 'Intentional,' in this context, means 'not that a wrong or the existence of a nuisance was intended but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance.'" *Angerman v. Burick*, 9th Dist. No. 02CA0028, 2003-Ohio-1469, ¶10.

**{¶21}** In applying that doctrine to the facts before it, the *Angerman* court stated that "[t]here is no question here that the [defendants] intentionally * * * created a great deal of noise. Even if they did not intend to generate noise, it apparently was an unavoidable byproduct of their intentional activity." *Id.* at ¶11.

**{¶22}** In other words, the terms "intentional act" do not refer to the nuisance itself, but to the conduct which gives rise to the interference. "'Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, the law of negligence has no application and the rule of absolute liability applies.'" *Id.* at ¶13.

**{¶23}** In the instant case, the trial court rejected appellants' request for an absolute nuisance instruction. Instead, the jury was given the standard OJI "qualified nuisance" charge. When this charge is compared with the standard OJI "absolute nuisance – intentional acts" charge it is readily apparent that other than the element of intentional conduct versus negligent conduct, the "proof of claim" is the same – the jury must find by the greater weight of the evidence that the conduct caused "annoyance,

7

injury, [or] inconvenience to, [or] "endangered the comfort, health, [or] safety of the plaintiff." Put another way, there must be proof of injury, i.e., that a nuisance exists and that the nuisance was created or caused by the defendant.

{¶24} We agree with appellants that the trial court erred as a matter of law in refusing to instruct the jury as to absolute nuisance. The evidence presented supports giving the absolute nuisance instruction. There was evidence that appellee's activity of manufacturing and the manner in which that process is conducted generates a humming noise and loud steam blasts as an apparent byproduct of that activity, regardless of the genuine, sincere attempts appellee has made to address appellants' complaints. Furthermore, based on the evidence, it does not appear that it is possible to eliminate either the humming or steam blasts.

{¶25} Nevertheless, the trial court gave the following instruction: "In deciding whether a nuisance exists, you may consider, among other factors, the nature of the injury, frequency of the disturbance, the character of the neighborhood, and the past actions taken by the defendant to reduce the disturbance. You must consider the comfort and convenience of persons of ordinary tastes and sensibilities. You must be guided by the generally accepted standard of comfort and convenience. Trifling and insignificant annoyances or inconvenience do not constitute nuisance. Likewise, unsubstantiated or unrealized fears do not constitute nuisance. Nuisance is a question of degree, depending upon varying circumstances."

{¶26} This is an appropriate instruction to be given in either an "absolute nuisance – intentional acts" or a qualified nuisance case. OJI 621.05 and 0JI 621.07.

8

Moreover, the above instruction makes it clear that the term "nuisance" encompasses the concept of injury to the plaintiff.

{¶27} The following interrogatory was presented to the jury: "Do you find by a preponderance of the evidence that the conduct of the defendant, Millenium Organic Chemicals, has created a nuisance?" The jury's unanimous response was, "no."

{¶28} The interrogatory, as drafted, is a compound question testing two aspects of appellants' burden of proof, whether a nuisance exists i.e., injury occurred, and if a nuisance exists, whether appellee created it. In answering this question, the jury concluded either that: (1) a nuisance is present but appellee did not create it or (2) whatever appellee created amounts to a trifling or insignificant annoyance or inconvenience not constituting nuisance. As the answer to the interrogatory demonstrates a failure in appellants' proof independent of whether appellee's conduct was intentional or negligent, appellants fail to show prejudice. Their first assignment is without merit.

{¶29} Under appellants' second assignment of error, they assert that the trial court erred in granting appellee's motion for a directed verdict as to the claims of Gevelaar, Jr. based on lack of standing. We disagree.

{¶30} Appellants rest their argument on the fact that Gevelaar, Jr. lived on the Tillotson Properties and testified as to how the noise from appellee's plant affected his life and caused him physical discomfort. The basis of the trial court's decision to grant appellee's motion for a directed verdict was that Gevelaar, Jr. had no ownership or leasehold interest in the property, and thus, no legal rights to the property. The property was owned by Gevelaar, Sr., who allowed his son to reside there rent-free.

9

**{¶31}** It is well-settled that a private nuisance involves anything that unreasonably interferes with another in the enjoyment *of his property*. (Emphasis added.) *Natale*, 2011-Ohio-4304, at ¶20, citing *Taylor v. Cincinnati,* 143 Ohio St. 426, 436 (1944). Thus, a nuisance action exists to remedy an injury to someone's property. Accordingly, Gevelaar, Jr. cannot pursue a nuisance action to recover for alleged damage to property he does not own or rent.

**{¶32}** Appellants' second assignment of error is not well-taken.

**{¶33}** Turning to appellants' third assignment of error, they allege that the trial court abused its discretion in refusing to permit the introduction of a tape recording made by Helen English of the noise at issue. They contend that the jury's hearing of the tape would have permitted the jury to understand the noise emanating from appellee's facility. Again, we reject appellants' argument.

**{¶34}** The recording at issue was introduced for the first time on the morning of the second day of trial. Ms. English testified that she made the recording the day before trial commenced. The record shows that during discovery, appellee specifically asked appellants to provide it with any exhibits appellants intended to utilize at trial. The trial court set a discovery deadline of May 31, 2011. Appellee also requested copies of any noise studies or evidence reflecting the noise of which appellants complained. However, the proposed recording appears nowhere on appellants' exhibit list.

**{¶35}** Essentially, appellee contends that the proposed introduction of this recording would have constituted unfair surprise and prejudiced its case since it was not produced during discovery so that its counsel was permitted to hear it before it was played in open court. We agree.

10

{¶36} "'One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request * * *.'" *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 85 (1985), citing *Jones v. Murphy*, 12 Ohio St.3d 84, 86 (1984). Ohio courts have routinely excluded evidence offered at the "eleventh hour." *See, e.g.*, *Huffman* (expert testimony proffered five days prior to trial date held to constitute unfair surprise); *United States Bank v. Amir*, 8th Dist. No. 97438, 2012-Ohio-2772, ¶22 (admission of county's valuation of property, which had not been disclosed prior to trial, would have constituted unfair surprise and prejudiced the opposing party).

{¶37} Here, appellants began to complain of the noise at issue for nearly three years prior to trial. At any time during that three year period preceding trial, they could have made a recording of the alleged noise, produced it during discovery and entered it into evidence. Yet, they did not do so. Instead, they waited to make the recording *after* trial commenced without permitting appellee's counsel an opportunity to hear it first.

{¶38} Accordingly, the trial court did not err in excluding this recording. Appellants' third assignment of error is not well-taken.

{¶39} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the trial court is affirmed.

MARY JANE TRAPP, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only, with a Concurring Opinion.

_____

11

DIANE V. GRENDELL, J., concurs in judgment only, with a Concurring Opinion.

{¶40} Although I concur in the judgment of the court, the majority opinion includes dicta which distorts the distinction between absolute and qualified nuisance. Accordingly, I concur only in the judgment of the court.

{¶41} The majority properly concludes, based on the jury interrogatory, that the plaintiffs-appellants failed to prove their case under either a theory of absolute nuisance or qualified nuisance. Thus, it is not necessary to decide whether the plaintiffs-appellants were entitled to a jury instruction for absolute nuisance. The majority, nonetheless, conducts such an analysis.

{¶42} The majority concludes that the plaintiffs-appellants were entitled to an instruction on "absolute nuisance," based on defendant-appellee's intentional "activity of manufacturing and the manner in which that process is conducted." Supra at ¶ 25. I disagree. In order to qualify as an absolute nuisance, defendant-appellee must cause "harm and resulting damage," which "are the necessary consequences of just the defendant is doing, or * * * incident to the activity itself or the manner in which it is conducted." (Citation omitted.) *Jennings Buick, Inc. v. Cincinnati*, 56 Ohio St.2d 459, 465, 384 N.E.2d 303 (1978).

{¶43} In the present case, there was no evidence that the alleged harm, i.e., excessive noise, was a necessary consequence of, or incident to, the operation of defendant-appellee's manufacturing facility. In fact, the evidence is undisputed that, from 1998 to 2006, "there was no noise of any kind emanating from the Appellee's plant." Appellants' brief at 2. Where the defendant is not engaging in an activity that constitutes a nuisance *per se*, it is inappropriate to impose strict or absolute liability on

12

that activity. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 713, 622 N.E.2d 1153 (4th Dist.1993) (the "essence" of absolute nuisance "is that no matter how careful one is, such activities are inherently injurious and cannot be conducted without damaging someone else's property or rights").

{¶44} The majority justifies the imposition of such liability based solely on the fact that defendant-appellee's conduct is intentional. To qualify as an absolute nuisance, however, the conduct must be "culpable and intentional." *Interstate Sash & Door Co. v. Cleveland*, 148 Ohio St. 325, 74 N.E.2d 239 (1947), paragraph one of the syllabus. Under the majority's application of the law, every type of nuisance potentially qualifies as an absolute nuisance, since even a qualified nuisance consists of some intentional act "so negligently or carelessly done as to create potential and unreasonable risk of harm." *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.*, 146 Ohio St. 406, 66 N.E.2d 203 (1946), paragraph two of the syllabus.

{¶45} For the foregoing reasons, I concur, in judgment only, with the decision to affirm the judgment of the court below.